539 So.2d 1258 (1989)
Jimmie Lee WEST, et al., Plaintiffs-Appellees,
v.
WAL-MART STORES, INC., et al., Defendants-Appellants.
No. 87-1284.
Court of Appeal of Louisiana, Third Circuit.
March 15, 1989.
Writ Denied May 19, 1989.
*1259 James L. Davis, Many, for plaintiffs-appellees.
Stafford, Stewart & Potter, Paul Boudreaux, Jr., Alexandria, for defendants-appellants.
Before DOMENGEAUX, FORET and YELVERTON, JJ.
DOMENGEAUX, Judge.
Defendants, Wal-Mart Stores, Inc., its insurer, National Union Fire Insurance Company and its employee, Phillip Andrus, appeal the Trial Court's decision awarding damages to the plaintiffs, Jimmie Lee West and his wife, Georgia West, in the amount of $2,000.00 and $3,000.00 respectively, for an illegal detention or false imprisonment in a Wal-Mart store. On appeal the defendants raise the following four assignments of error:
(1) The Trial Court erred in denying the defendants' motion for summary judgment.
(2) The Trial Court erred in determining that Wal-Mart was liable for an illegal detention when Wal-Mart's employee acted in good faith, without malice, in a business-like manner and the entire event lasted less than five minutes.
(3) The Trial Court erred by applying the test of "probable cause to arrest" instead of the "reasonable cause to detain and investigate" test.
(4) The Trial Court erred in awarding excessive damages.
Plaintiffs have answered the appeal seeking an increase in quantum to $7,500.00 and $10,000.00 respectively for Mr. and Mrs. West.

FACTS
On March 21, 1986, in Leesville, the plaintiffs, Mr. and Mrs. Jimmie West were shopping in a Wal-Mart store. Defendant, Phillip D. Andrus, an eighteen year old "support team manager" at Wal-Mart had been assigned to manage the cash register area. Besides attending to the needs of the cash registers, he was also required to watch for suspected shoplifters. As the Wests were leaving the cash register area, Andrus observed checked out goods in their shopping basket and a large bag of dog food on the bottom of their cart. Believing that the cashier had not charged for the dog food, Andrus hurried to catch up with the Wests who were proceeding to exit the store.
*1260 When Andrus caught up with the Wests, he asked to see their cash register receipt and told them that he thought they had not paid for the dog food. They stated that they had paid and showed him their receipt. Unfortunately, due to the very light print, the manner in which the receipt had been stapled to a bag and a black spot near the top of the receipt, Andrus could not discern the "dog food" item which, in fact, was the first item listed. Since the Wests claimed that they had paid, Andrus decided to ask the cashier whether she had checked out the dog food. Andrus then returned inside the store with the Wests' shopping cart and in a loud manner, asked the cashier whom he believed checked out the Wests whether she had checked out the dog food. The cashier looked at the Wests, (who had now followed Andrus back into the store), and denied checking them out. At this point, another nearby cashier stated that she had checked them out and that they had paid for the dog food. The Wests then showed Andrus where the dog food was on the receipt. Andrus then apologized and thanked the Wests for shopping at Wal-Mart. At this point Mrs. West became incensed, started crying and asked to see a nearby customer service manager, Mr. Gene Mayo. While no testimony of Mr. Mayo is in the record, he allegedly apologized to the Wests and told them that Andrus had made a mistake. Dissatisfied with this response, the Wests put their merchandise in their car and returned to see Mr. Parker, the store's general manager. Again, no testimony of Mr. Parker is in the record but allegedly, he also apologized to the Wests for any embarrassment caused by Andrus' mistake and told them there was nothing further he could do. All parties testified that the incident involving Andrus lasted less than five (5) minutes and that the Wests stayed in the store after the incident for less than thirty (30) minutes.
No testimony was adduced at the trial and the case was submitted to the Trial Judge based on the depositions of Phillip Andrus and Mr. and Mrs. West. The Trial Judge ruled in favor of the plaintiffs, finding that Wal-Mart had no reasonable cause to detain the Wests because "Andrus observed no furtive appearance or suspicious conduct on the part of the Wests. He did not observe them at the checkout counter. He did not know which cashier handled their transaction. He did not bother to question any cashier before the detention. There was nothing irregular about the position of the sack of dog food; admittedly it was not customary for the dog food to be placed in a sack." (TT. p. 123)
While there had been no evidence of residual emotional or physical trauma, the Trial Court nonetheless awarded $2,000.00 to Mr. West and, $3,000.00 to Mrs. West because she had been more perturbed by the incident. As stated hereinabove, Wal-Mart, its insurer, and Andrus have appealed this ruling and award, and the plaintiffs have answered the appeal requesting an increase in quantum.

MOTION FOR SUMMARY JUDGMENT
Initially, the defendants appeal the Trial Court's denial of their motion for summary judgment. Under La.C.C.P. art. 968, a party may not appeal a court's refusal to render a summary judgment. Therefore, we shall address the defendants' additional assignments of error which considered the merits of the defendants' motion for summary judgment.

REASONABLENESS OF THE DETENTION
Assignments of error numbers 2 and 3 shall be addressed together since both issues concern the reasonableness of the Wests' detention.
The defendants argue that the plaintiffs presented insufficient proof of illegal detention or false imprisonment because Andrus conducted his detention in good faith, without malice and in a business-like manner which lasted less than five minutes. Alternatively, the defendants contend that they should have been exempt from liability under La.C.Cr.P. art. 215 which authorizes a merchant to detain and question a person suspected of shoplifting.
*1261 La.C.C. art. 2315 has been interpreted to provide a cause of action in favor of those whose "liberty has been interfered with in an unwarranted manner." Jones v. Soileau, 448 So.2d 1268 (La.1984). The tort of "false imprisonment" derives from the common law's treatment of this area of the law. Stark v. Eunice Superette, Inc., 457 So.2d 291 (La.App. 3rd Cir.), writ denied, 461 So.2d 316 (La.1984). False imprisonment occurs when one is arrested and restrained against his will by another who acts without a warrant or other statutory authority. Johnson v. State, through Dept. of P. Safety, 451 So.2d 104 (La.App. 3rd Cir.), writ denied, 457 So.2d 15 (La. 1984).
The plaintiffs presented evidence that they had been detained against their will and without a warrant by Wal-Mart's employee for suspected nonpayment of an item for which they had paid. In order for the employer to escape liability, he must prove that the plaintiffs were detained in compliance with La.C.Cr.P. art. 215 which provides in pertinent part:
A. (1) A peace officer, merchant, or a specifically authorized employee or agent of a merchant, may use reasonable force to detain a person for questioning on the merchant's premises, for a length of time, not to exceed sixty minutes, unless it is reasonable under the circumstances that the person be detained longer, when he has reasonable cause to believe that the person has committed a theft of goods held for sale by the merchant, regardless of the actual value of the goods. The merchant or his employee or agent may also detain such a person for arrest by a peace officer. The detention shall not constitute an arrest. (emphasis added)
The words "reasonable cause" for an investigatory detention is something less than probable cause. The detaining officer must have articulable knowledge of particular facts sufficiently reasonable to suspect the detained person of criminal activity. State v. Hudgins, 400 So.2d 889 (La.1981); Wilson v. Wal-Mart Stores, Inc., 525 So.2d 111 (La.App. 3rd Cir.1988). In addition, the determination of whether there was reasonable cause to detain a person is a factual finding to be decided by the trier of fact and his determination will not be reversed in the absence of a manifest abuse of discretion. State v. Hudgins, supra; Wilson v. Wal-Mart Stores, Inc., supra.
In his findings of fact, one reason the Trial Judge concluded that Andrus did not have reasonable cause to detain the Wests was because Andrus had not spoken to a cashier before stopping the Wests. The defendants argue that this was a manifestly erroneous factual finding because Andrus stated in his deposition and in his employee report that, before he approached the plaintiffs, he did ask a cashier whom he believed had checked out the Wests whether or not she had checked out "that dog food". Her response, "I didn't check out any dog food" led him to believe that the cashier had missed the item. It was not until after the Wests were stopped did Andrus learn from another cashier that the plaintiffs had paid for the dog food. The defendants argue that under these facts, Andrus did have reasonable cause to detain the Wests and hence, article 215's immunity should be applied.
As stated earlier, the Trial Judge's ruling was made on the basis of deposition testimony only; no witnesses testified at trial. Even where the evidence before the trier of fact consists solely of written reports, records and depositions, the manifest error standard of review still applies. Virgil v. American Guar. and Liability Ins., 507 So.2d 825 (La.1987). That rule, as set forth in Canter v. Koehring Co., 283 So.2d 716 (La.1973), requires that the reviewing court give great weight to factual conclusions of the trier of fact; where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
Upon review of the Andrus deposition, his testimony regarding whether or not he first spoke to a cashier before approaching *1262 the Wests is confusing and ambiguous. While our review of Andrus' testimony would lead us to conclude that he did first speak to a cashier, we are nonetheless compelled under Virgil, supra, to afford great deference to the Trial Judge's factual determination. Therefore, as we find marked ambiguity in Andrus' deposition testimony on this critical factual issue, we find no manifest error in the Trial Court's factual finding that Andrus did not first speak to a cashier. Hence, considering the Trial Court's findings of fact, we are constrained, albeit reluctantly, to affirm the Trial Court's ultimate conclusion that Andrus did not have reasonable cause to detain the Wests.

QUANTUM
Both the plaintiffs and the defendants have appealed the amount of the award. The Trial Court awarded $3,000.00 to Mrs. West and $2,000.00 to Mr. West. The defendants contend that the Trial Court's award was excessive and suggest that the award be reduced to a minimum of $500.00 per plaintiff. The plaintiffs have answered the appeal and ask this Court to increase the award to $10,000.00 for Mrs. West and $7,500.00 for Mr. West.
The standard of appellate review of quantum awards is well established:
Before a Court of Appeal can disturb a quantum award made by the Trial Court, the record must clearly reveal that the trier of fact abused its discretion in making its award; only after making a finding that the record supports that the lower court abused its much discretion can an appellate court disturb the award and then only to the extent of lowering it or raising it to the highest or lowest point which is reasonably within the discretion afforded that court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Prior to making the award, the Trial Judge considered the brief amount of time involved and the lack of any residual emotional and/or psychological trauma. We agree with the Trial Judge that the plaintiffs' damages are minimal, but must disagree with the sums awarded. Applying the standard of review set forth in Coco and its progeny, we believe the highest permissible award to Mrs. West to be $1,000.00 and to Mr. West to be $700.00. We will, therefore, amend the judgment of the District Court accordingly.
For the foregoing reasons the Judgment of the Trial Court is amended so as to reduce the award of Mrs. West to the sum of $1,000.00 and of Mr. West to the sum of $700.00. The judgment in all other respects is affirmed. Costs on appeal are assessed one-half against the plaintiffs and one-half against the defendants.
AMENDED AND AFFIRMED.
FORET, J., dissents and will assign written reasons.
FORET, Judge, dissenting.
I respectfully dissent from the majority's affirmation of the trial court judgment which found an illegal detention or false imprisonment in the defendant store, and of course, for the awarding of damages.
If the trial court judgment and our affirmation thereof are correct, I just don't know what a store owner can do to protect himself against shoplifters if the facts as "adduced" in this case make this defendant liable for false arrest. Must the merchant act at his peril in expressing even the slightest suspicion or inquiry? It is common knowledge that shoplifting runs rampant in our society. The increase in the price of goods which merchants have to make to cover the losses sustained as a result of shoplifting is a burden which we all must bear. The Louisiana Legislature, recognizing the seriousness of the situation, adopted Art. 215 of the Louisiana Code of Criminal Procedure and subsequently amended the said article in 1976, 1983, and again in 1987. Our affirmation of the trial court's judgment on the facts of this case is practically tantamount to a judicial repeal or at least a repudiation of Art. 215. I dissent from the finding of liability on the part of Wal-Mart.
The majority proposes to reduce the amount of damages from $3,000 to $1,000 *1263 for Mrs. West, and from $2,000 to $700 for Mr. West. While I dissent from the granting of any damages, I do not dissent from the reduction of the trial court judgment's award. As a matter of fact, under the "damages" shown in this case, we are stretching to justify the amount which the majority awards.