670 So.2d 603 (1996)
Robert C. THOMAS, Plaintiff-Appellee,
v.
Rodney BUSBY and Wal-Mart Stores, Inc., et al., Defendants-Appellants.
No. 95-1147.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1996.
*606 Otis Edwin Dunahoe, Jr., for Robert C. Thomas.
James Dey Kirk, Alexandria, for Rodney Busby and Wal-Mart Stores, Inc.
Before PETERS, AMY and SULLIVAN, JJ.
PETERS, Judge.
Robert C. Thomas brought this action to recover damages for defamation, the cost of three bags of potting soil, and treble damages and attorney fees under the Unfair Trade Practices and Consumer Protection Law, La.R.S. 51:1401 et seq. Named as defendants are Wal-Mart Stores, Inc. and two Wal-Mart employees, Rodney Busby and Kelly Pearson. The defendants answered the action and reconvened for attorney fees and defense costs, contending that Thomas' claims under Title 51 was groundless, brought in bad faith, and brought for the purpose of harassment. The trial court rendered judgment in favor of Thomas against the defendants in the amount of $25,019.13, representing $25,000.00 in general damages and $19.13 for the cost of the potting soil. Thomas' claim for attorney fees and treble damages was rejected as was the defendants' reconventional demand.
The defendants have appealed contending that the trial court erred in finding that Thomas proved the elements of defamation; in failing to consider Thomas' comparative fault in causing a scene and in publicizing the incident; in awarding $25,000.00 in general damages; and in failing to award them relief under their reconventional demand. Thomas has answered this appeal, asserting that the trial court erred in not awarding attorney fees and damages pursuant to Title 51.

DISCUSSION OF THE RECORD
In May of 1994, Thomas purchased four bags of potting soil from the Wal-Mart store in Natchitoches, Louisiana. At the time he purchased the potting soil, Barbra Sutfin was the Wal-Mart employee who handled the transaction. He used only one of the bags and decided later the same day to return the three unused bags for a refund. At that time, the Wal-Mart gardening center was located outside the store itself. Thomas parked his vehicle on the west side of the gardening center and approached the cash register location in the gardening center to speak to a Wal-Mart representative.
When he attempted to return the potting soil, Ms. Sutfin was at lunch and Ms. Pearson was on duty. Thomas did not have his receipt or the potting soil with him when he initially entered the gardening center. He told Ms. Pearson that he had bought the four bags of potting soil earlier in the day, that he had used only one bag, that he had lost his receipt, and that he would like to return the other three bags for a refund. Ms. Pearson told Thomas that he would have to bring the potting soil inside.
According to Ms. Pearson, Thomas was dressed in an old T-shirt and some faded shorts and appeared unshaven. She described him as "just kind of scruffy." She thought that he appeared nervous, and she observed him looking at different prices on the different stacks of dirt. She did not see his vehicle and became suspicious. Ms. Pearson then went inside of the store and got the attention of another Wal-Mart employee, Mary Owens. Ms. Pearson asked Ms. Owens to watch Thomas until she could find a store manager.
According to Ms. Owens, Ms. Pearson directed her attention to Thomas specifically and informed her that she believed Thomas had taken some potting soil from one of their pallets. Ms. Pearson informed Ms. Owens that she was going to get Mr. Busby, the *607 assistant manager. Ms. Owens began to observe Thomas and saw him standing at the back of his vehicle with some potting soil in a store buggy.
Sherrie Cotton was working at the Wal-Mart service desk at this time. She testified that as Thomas entered the store, she heard a "501 code" being announced over the store public address system. According to Ms. Cotton, a 501 code is the code announcing the presence of a shoplifter. She did not realize that the code was directed to Thomas. Wal-Mart's refund policy is that if a customer has no receipt, a refund may still be given if the customer has proper identification, if the merchandise is under $25.00, and if the customer has made less than three no-receipt returns within six months. Thomas approached Ms. Cotton for a refund and presented his driver's license for identification. The amount of the refund requested was $19.13, and Wal-Mart's records did not reflect that Thomas had made three no-receipt returns within the previous six months. Ms. Cotton was in the process of giving Thomas his refund when Busby and Nanette LaCaze, a Wal-Mart support team manager at the time, arrived at the service desk. Busby ordered Ms. Cotton not to give the refund.
What transpired is in dispute. According to Thomas, he asked Busby if he was serious and Busby said, "I sure am serious." Thomas testified that Busby said, "[W]e've got two people that saw you take it off the inventory outside and bring it in here without paying for it," or words to that effect. Ms. LaCaze and Busby denied that Busby made this statement. Busby testified that he told Thomas that "the two ladies that were on duty at that time did not remember waiting on him and that [he] needed to see his receipt." Busby testified that Thomas was never accused of stealing or theft. Rather, Busby claimed he exercised his management discretion to deny the refund because there were suspicious circumstances. According to Ms. LaCaze, the only words that Busby used were "no refund." Ms. Cotton testified that she did not hear Busby make any statements to Thomas about why he was not being refunded his money. According to Thomas, there were several customers in line right behind him.
Thomas, an attorney, pulled out his business card and made a statement to the effect that they had just bought themselves a lawsuit. Busby, Ms. Cotton, and Ms. LaCaze testified that Thomas was loud, and Ms. Cotton and Ms. LaCaze indicated that Thomas used profanity. Thomas was not detained or arrested, and the police were not called.
Thomas then returned to the gardening center to find Ms. Pearson. Busby was paged. According to Ms. Pearson, Thomas came running out of the store cursing, screaming, waiving his arms around, and wanting to know who had gone inside and pointed him out. Thomas left the store.
Thomas returned to Wal-Mart after Ms. Sutfin returned from her lunch break. Ms. Sutfin remembered selling the potting soil to Thomas. The register tape showed that four bags of potting soil had been purchased. Thomas did not receive a refund or the potting soil he had attempted to return.

OPINION

Defamation
The defendants first contend that the trial court erred in finding that Thomas proved the elements of a claim for defamation. The elements of defamation are: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. Crooms v. Lafayette Parish Gov't, 628 So.2d 1224 (La.App. 3 Cir. 1993).
The defendants argue that the trial court erred in crediting Thomas' testimony, as it is disputed by Busby and every other witness who testified at trial. We first note that whether defamation has been proven is principally a factual analysis and our review is governed by the manifest error standard. When factual findings are based on determinations regarding the credibility of witnesses, the manifest error standard requires great deference to the trier of fact's findings. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where documents or objective evidence so contradict the witness' story or the story *608 itself is so internally inconsistent or implausible on its face that a reasonable trier of fact would not credit the witness' story, the court of appeal may find manifest error, even in a finding purportedly based upon a credibility determination. Id. However, absent such factors, where a trier of fact's findings are based on its decision to credit the testimony of one of two or more witnesses, those findings can virtually never be manifestly erroneous or clearly wrong. Id.
The defendants contend that no defamatory words were used. However, the trial court found that a 501 code, or shoplifter code, was announced over the public address system and that in close proximity thereto, Busby approached the service desk and advised Ms. Cotton not to make a refund on the potting soil. Also, the trial court chose to credit Thomas' testimony as to what occurred in the conversation after Busby arrived at the service desk. Specifically, the trial court concluded that when Thomas asked Busby why the refund was denied, Busby advised him that two employees had seen him remove the merchandise from the pallet outside without paying for it. We find no manifest error in the trial court's decision to credit the testimony of Thomas in this regard.
The defendants, citing Sassone v. Elder, 626 So.2d 345 (La.1993), assert that even assuming that Busby used the words that Thomas claims he used, those words set forth nondefamatory "facts" on which the opinion was based and are therefore not defamatory. However, Sassone addressed the issue in the context of defamation by innuendo. In the instant case, the trial court found that the words imputed a crime; this is not a case of innuendo. Although the words "thief" or "shoplifter" may not have been used, the imputation of criminal conduct was clear under the circumstances. Since the defendants imputed criminal conduct to Thomas, the words were defamatory per se. See Crooms, 628 So.2d 1224. Thus, we reject the defendants' arguments in this regard.
The defendants also contend that Thomas failed to prove the element of publication. Specifically, the defendants assert that the statement was made only to Thomas and not to a third person. "Publication" is the communication to a person other than the one alleging the action. Id. According to Thomas, there were several customers in line immediately behind him. Ms. Cotton testified that when Thomas was leaving, there was one customer standing at the desk, but she testified that customers were not close enough to have heard what Busby said. The defendants assert that Thomas did not identify any person who might have heard the words, and the remaining testimony is to the effect that no one was in hearing distance of Busby's words. They assert rather that Thomas and his wife were the ones who published the incident. Thomas acknowledged that he told others about the incident because he did not want them to hear of it from Wal-Mart employees or someone who had been in the store. As with the determination of what was actually said, the trial court apparently credited the testimony of Thomas concerning publication. Again, we find no manifest error in this regard.
The falsity of the statements is not at issue. When Ms. Sutfin returned from lunch and confirmed that Thomas had purchased the potting soil earlier in the day, it was apparent that Thomas had not been guilty of shoplifting. However, the defendants argue that assuming proof of defamatory words, publication, and falsity, there is no evidence of the element of malice. We reject this argument, as words which impute a crime are defamatory per se, and proof of malice is not required. Id.

Comparative Fault
Relying on Veazey v. Elmwood Plantation Assocs., Ltd., 93-2818 (La. 11/30/94); 650 So.2d 712, the defendants contend that the trial court erred in failing to consider Thomas' comparative fault in causing a scene and in publicizing the incident. In Veazey, the supreme court found that the Louisiana comparative fault law is broad enough to encompass the comparison of negligent and intentional torts in an appropriate factual setting. Without discussing the effect of Veazey on a defamation case and more particularly on the case at hand, we find that *609 the trial court considered Thomas' comparative fault, as it stated:
The suggestions by counsel that the plaintiff created his own problems by complaining about being accused of theft is [sic] likewise absurd. This suggestion, carried to its logical conclusion would be that this plaintiff should have compliantly agreed with the employees at Wal-Mart that he was a thief in order to keep the verbiage and volume down. The court concludes that the conduct of this plaintiff was the type of conduct that one might expect to encounter when falsely accusing a reputable citizen of theft and shoplifting.
Assuming comparative fault should apply in the instant case, we find no manifest error in the trial court's failure to find that Thomas' actions in "making a scene" rendered him comparatively at fault.

Damages
The defendants contend that the trial court abused its discretion in awarding $25,000.00 in general damages. The defendants assert that any consternation, embarrassment, or humiliation caused to Thomas was due primarily to the manner in which Thomas mishandled the situation and cannot be attributed to the few words he alleges Busby said.
Damages for defamation can include injury to reputation, personal humiliation, embarrassment, and mental anguish and suffering. Lege v. White, 619 So.2d 190 (La. App. 3 Cir.1993). In oral reasons for judgment, the trial court found that there had been no proof that Thomas' business reputation had been damaged but that there was proof that he was extremely upset as a result of the incident. In written reasons for judgment, the trial court stated in part:
This plaintiff, being the law-abiding, decent citizen that he is as well as being in a profession dedicated to upholding the law, and having no criminal record, was certainly disturbed by this defamation and is entitled to a sufficient amount of damages to compensate him for the extreme embarrassment and mental anguish that he had to undergo as a result of being called a thief in person and over the public address system in Wal-Mart. When the coded call went out over the public address system that there was a shoplifter at the service desk, all the checkers whose work stations adjoined the service desk, were able to look directly at the "thief" and every other Wal-Mart employee, if not, the general public knew that this plaintiff had been singled out as a shoplifter....
... Thomas was so depressed and upset and embarrassed over this situation that instead of returning to his home he went to his office to be alone for some period of time after this. Then as the word spread in the community and in the legal profession he was the butt of jokes for weeks about being caught shoplifting at Wal-Mart. As a result of this extreme embarrassment over a continuing period of time as a result of this defamation the court concludes that the damages in this case should be greater than those amounts set forth in the various cases cited by the defendant.
Thomas testified that he was embarrassed and humiliated and that for the first few weeks, he was consumed with the incident. However, he sought no professional treatment from a physician, psychiatrist, or psychologist. Despite the lack of expert testimony, we are mindful of the Louisiana Supreme Court's guidance to appellate courts concerning the review of general damage awards. In Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, ___U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the supreme court stated:
[T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages.... It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Pursuant to Youn, we hold that the trial court did not abuse its discretion in the award of general damages. But see Lege, *610 619 So.2d 190; Melancon v. Hyatt Corp., 589 So.2d 1186 (La.App. 4 Cir.1991), writ denied, 592 So.2d 411 (La.1992).

Unfair Trade Practices
Thomas' claim for treble damages and attorney fees under the Unfair Trade Practices and Consumer Protection Law, La.R.S. 51:1401 et seq., was rejected by the trial court. This claim was based on the fact that the defendants failed to return the potting soil to Thomas or tender a refund, even after the defendants had proof that Thomas had lawfully purchased the potting soil. The trial court concluded that the prerequisites had not been met to make out a claim for attorney fees under the act. Additionally, the defendants' reconventional demand for attorney fees and costs was rejected by the trial court. The defendants have appealed the denial of the reconventional demand, and Thomas has answered the appeal, seeking reversal of the trial court on the issue of damages and attorney fees.
The defendants contend that the request for relief under Title 51 was made without regard to the provisions and requirements of the statutes, without regard to the facts of this case, and without compliance with the prerequisites required by the Unfair Trade Practices and Consumer Protection Law. Both sides rely on the provisions of La.R.S. 51:1409, which provides in part:
A. Any person who suffers any ascertainable loss of money or movable property... as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405, may bring an action individually ... to recover actual damages. If the court finds the unfair or deceptive method, act or practice was knowingly used, after being put on notice by the director or attorney general, the court shall award three times the actual damages sustained. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney's fees and costs. Upon a finding by the court that an action under this section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney's fees and costs.
The defendants contend that Wal-Mart was never placed on notice by the director or attorney general and therefore the prerequisites for relief have not been met. The defendants also contend that Thomas knew that the prerequisites had not been met when he sued for treble damages and attorney fees. Thus, the defendants contend that the claim was brought in bad faith or for purposes of harassment and that this court should award attorney fees and costs.
Thomas concedes that Wal-Mart has not been placed on notice by the director or attorney general as required by La.R.S. 51:1409. However, the failure of the director or attorney general to place Wal-Mart on notice only defeats the claim for treble damages but not the claim for actual damages, attorney fees, and costs. See La.R.S. 51:1409. While the claim for treble damages is groundless, we hold that the trial court could have reasonably found that the claim was not brought in bad faith or for the purposes of harassment. In any event, as set forth below, we find that Thomas' claim for actual damages and attorney fees has merit. Thus, we find no error in the trial court's denial of the defendants' reconventional demand.
La.R.S. 51:1405(A) declares as unlawful unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. A trade practice is considered unfair when it offends public policy and when it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Bryant v. Sears Consumer Fin. Corp., 617 So.2d 1191 (La. App. 3 Cir.), writ denied, 619 So.2d 533 (La.1993). It is left up to the courts to determine what constitutes unfair trade practices. Id.
In the instant case, Wal-Mart's retention of the potting soil and the refund may be considered conversion. Conversion is the wrongful dominion exerted over another's property in denial of or inconsistent with his rights. Gautreau v. Southern Milk *611 Sales, Inc., 463 So.2d 1378 (La.App. 3 Cir. 1985). In Gautreau, this court did not reach the issue of whether the retention of funds constituted an unfair trade practice since the court found that the action constituted tortious conversion. See also Gautreau v. Southern Milk Sales, Inc., 509 So.2d 495 (La.App. 3 Cir.1987). However, in Bryant, 617 So.2d 1191, this court held that the wrongful conversion/repossession of a motor home constituted an unfair trade practice.
In the instant case, it is not clear that the trial court reached the determination of whether Wal-Mart's actions in failing to refund the purchase price of the potting soil or to return the potting soil constituted unfair trade practices since it based its determination on the fact that Thomas did not meet all of the prerequisites of the act, which we assume to be in reference to the failure to obtain notification from the director or attorney general. However, it is clear that Wal-Mart wrongfully exerted dominion over Thomas' property. Moreover, Wal-Mart was aware, following the incident, that Thomas had in fact purchased the potting soil, but Wal-Mart failed to return the soil or give a refund, even after suit was filed. Under the circumstances of this case, we find Wal-Mart's actions constituted unfair trade practices. We find no actual damages other than the return of the purchase price which has already been awarded.[1] However, we award attorney fees to Thomas in the amount of $5,000.00.

DISPOSITION
For the foregoing reasons, we reverse the denial of attorney fees and award attorney fees to Thomas in the amount of $5,000.00. We affirm the judgment in all other respects and assess costs of this appeal to the defendants.

AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
AMY, J., concurs in part and dissents in part with written reasons.
AMY, Judge, concurring in part and dissenting in part.
I agree with the majority that it was not manifestly erroneous for the trial court to conclude that the elements of a defamation claim had been met. As the majority points out, the trial court's decision was based upon credibility determinations, and under Rosell v. ESCO, 549 So.2d 840 (La.1989), when a factual finding is based upon credibility determinations, that finding can virtually never be manifestly erroneous.
However, I respectfully disagree with the majority's conclusion that plaintiff is entitled to attorney's fees under the Unfair Trade Practices and Consumer Protection Law. It is my opinion that the Unfair Trade Practices and Consumer Protection Law is inapplicable to the facts of this case.
Furthermore, I disagree with the majority's affirmation of the general damage award of $25,000. In my view, the award is greatly excessive and a clear abuse of the trial court's discretion. Therefore, in accordance with Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), I would reduce the award to the highest amount which is reasonably within the trial court's discretion. See West v. Wal-Mart Stores, Inc., 539 So.2d 1258 (La.App. 3 Cir.), writ denied, 543 So.2d 19 (La.1989).
NOTES
[1] In Gour v. Daray Motor Co., Inc., 373 So.2d 571 (La.App. 3 Cir.), writs granted, 376 So.2d 1270, writs dismissed as moot, 377 So.2d 1033 (La.1979), this court held that it was the intent of the legislature to allow restitutionary recovery as well as other damages under La.R.S. 51:1409(A).