714 So.2d 721 (1998)
Gordon J. TRENTECOSTA
v.
Robert BECK, Ronnie Jones, Kermit Smith and The Louisiana Department of Public Safety and Corrections.
No. 95-CA-0096.
Court of Appeal of Louisiana, Fourth Circuit.
February 25, 1998.
Opinion Granting Rehearing in Part May 13, 1998.
*722 Richard A. Tonry, Michael C. Ginart, Jr., Kim C. Jones, Law Office of Tonry & Ginart, Chalmette, for Plaintiff-Appellee Gordon J. Trentecosta.
Richard Ieyoub, Attorney General, Gregory G. D'Angelo, Special Assistant Attorney General, Panzeca & D'Angelo, Metairie, for Defendant-Appellant The State of Louisiana, Department of Public Safety and Corrections.
Before BARRY, LOBRANO, ARMSTRONG, WALTZER and LANDRIEU, JJ.
WALTZER, Judge.
In No. 96-C-2388, the Louisiana Supreme Court set aside the judgments of the trial court and of this court and rendered judgment against defendant Kermit Smith and the State of Louisiana Department of Public Safety & Corrections, in solido, for the damages caused by Smith's defamation of plaintiff, and remanded the case to this Court to fix the amount of those damages.
In the Supreme Court's opinion, this court is directed to fix the amount of damages anew and, in so doing to consider that the defamation award must be based not on the damages caused by the arrest of plaintiff Trentecosta or by the license suspension, but on the damages caused by the defamatory statement.

The Defamatory Statement
The Supreme Court agreed with the lower courts that Officer Smith's statement that plaintiff was guilty of bilking thousands of dollars from charities using his Bingo Hall over the years was defamatory. This Court is now called upon to fix anew the damages that will reasonably compensate plaintiff for that defamation.
Damages for defamation can include injury to reputation, personal humiliation, embarrassment, and mental anguish and suffering. Thomas v. Busby, 95-1147 p. 8 (La. App. 3 Cir. 3/6/96), 670 So.2d 603, 609. The Thomas court upheld a $25,000 defamation award based on plaintiff's testimony that he *723 was embarrassed and humiliated by having been stopped at a Wal-Mart gardening center and accused in front of other customers of stealing three bags of soil that he was actually in the act of returning for a refund. Thomas testified that he was embarrassed and humiliated and that for the first few weeks was consumed by the incident, but sought no professional treatment.[1]
In McGowan v. Warwick Corp., 96-0851 (La.App. 4 Cir. 3/12/97), 691 So.2d 265, this Court affirmed a lower court award of $5,000 general damages and $990 in lost wages to a hotel employee who was falsely accused of robbing hotel guests and was incarcerated on the charge for six weeks. The employer did not answer the charges, and the employee obtained his judgment by default. There was no publication of the defamatory words.
In Smith v. Atkins, 622 So.2d 795 (La.App. 4 Cir.1993), this Court increased a defamation award to $5,000 on proof that a college teacher referred in class to plaintiff, a female student, as a "slut," causing negative reactions by her fellow students and requiring plaintiff to seek psychiatric help for depressive disorder.
An award of $500 was increased by $5,000 in Lege v. White, 619 So.2d 190 (La.App. 3 Cir.1993). White said on more than one occasion and to more than one person that she was an undercover narcotics officer for the Vermillion Parish Sheriff's Office and was investigation Lege for the use and sale of illegal drugs. Other rumors, allegedly emanating from White and White's aunt's ex-husband implicated Lege for drug use and for hosting parties involving nudity, sex, and drug use. The court of appeal accepted the trial court's credibility determinations that led it to award $500 arising out of one or two prior incidents of suspicious events dating back to 1970, and awarded an additional $5,000 for White's defamatory statements made in connection with a 1986 eviction proceeding.
In Melancon v. Hyatt, 589 So.2d 1186 (La. App. 4 Cir.1991), 592 So.2d 411 (La.1992), this Court reduced an award of $22,500 for loss of reputation, $45,000 for mental pain and suffering, and $22,500 for embarrassment and humiliation where there was no testimony as to plaintiff's loss of reputation in the community and he did not seek medical help for his alleged depression. The award was reduced to $10,000 for pain and suffering, embarrassment and humiliation, and loss of reputation, combined, then the highest reported Louisiana award in general damages for defamation.
The record supports an award of $50,000. The publication in our metropolitan area that plaintiff "bilked thousands of dollars" from charities was made with egregious and reckless disregard for plaintiff's unblemished reputation.

Damages caused to the business by reason of Officer Smith's defamatory statement.
The publication of the defamatory statement was made in May, 1989. Mr. Trentecosta's bingo hall showed cash flows between 1985 and 1988 of $162,439, $76,364, $47,810 and $182,810. After the publication, cash flow was $92,167 (1989), $75,449 (1990), $23,204 (1991) and $3,555 (1992). While State exhibit # 2, a chart showing St. Bernard Parish bingo rental revenues from 1988 to 1992, shows a dip from 1989 (approximately $950,000) to 1990 (approximately $850,000), those revenues increased in 1991 to approximately the 1989 level where it remained in 1992.
It is difficult to assess the relative proportion of this loss attributable to the defamatory statement and to the actual arrest. The highly defamatory nature of the publication leads us to attribute one-half of the decrease to the statement and one-half to the arrest. Thus, under direction from the Louisiana Supreme Court, the award for business losses arising out of the defamatory statement is found to be $94,357.50.

CONCLUSION AND DECREE
On remand from the Louisiana Supreme Court, and in light of the foregoing reasons, we render the following judgment:

*724
To Gordon Trentecosta for
 general damages: $50,000
To C&T Arabi, Inc. for losses
 attributable to defamatory
 statement of Officer Smith: $94,357.50.

JUDGMENT RENDERED AFTER REMAND.
LOBRANO, J., concurs.
ARMSTRONG, J., dissents for the reasons assigned by LANDRIEU, J.
LANDRIEU, J., dissents with reasons.
LOBRANO, Judge, concurring.
I agree with the majority result. I write separately for two reasons.
First, the remand from the Supreme Court concludes with the statement "[t]he case is remanded ... to fix the amount of those damages." I interpret that language to mean that we must determine damages "de novo" with no weight given to the trial court award.
Second, although the majority awards C&T Arabi, Inc. one-half of the amount awarded by the trial court citing the decrease in cash flow, I believe reliance on the rent decrease is more supportive of the award. Plaintiff's exhibit 21 shows a decrease in rent from 1989 to 1990 of almost $100,000.00, and from 1990 to 1991 of approximately $20,000.00. Keeping in mind that plaintiff's operations were based on a fiscal year (June 1st to May 31st) and that the defamatory statement was in May of 1989, it is reasonable to conclude that the drop in rent in the first fiscal year following the defamatory statement was attributable to its publication. Thus, for that reason I concur in the award of $94,357.00 by the majority.
LANDRIEU, Judge, dissenting with reasons.
There is no question but that Mr. Trentecosta was seriously hurt by the over zealous actions and statements of the State Police.
There are, however, questions as to which of the actions and statements caused him damage and to what extent.
The Trial Court awarded Mr. Trentecosta $25,000.00 for general damages and C&T Arabi, Inc. $188,715.00 for economic damages. Those awards were made by the Trial Court after holding that Officers Beck, Jones and Smith had defamed Mr. Trentecosta in two statements. This court affirmed that judgment on appeal.
In response to an application for a writ of review, the Supreme Court found that there was no proof Officer Beck made any of the statements, that the statement attributable to Officer Jones was not actionable, and that only the statement attributable to Officer Smith was actionable. The only actionable statement appeared in the bottom half of a lengthy article of approximately five hundred words in The Times/Picayune about the "sting" operation and the arrest of Mr. Trentecosta. Officer Smith is credited with having stated that "... the operation bilked thousands of dollars from charities using the hall over the years."
The caption of the article stated "ARABI BINGO HALL BUST NETS BOSS, WORKERS."
The Supreme Court set aside the judgments of the Trial Court and of this court, rendered judgment against Officer Smith and the State of Louisiana, in solido, and remanded the case to this court to fix the amount of damages in light of the revised judgment. The Supreme Court emphasized that "... the court of appeal, in fixing anew the amount of damages, should consider that the defamation award in this case must be based not on the damages caused by the arrest or by the license suspension, but on the damages caused by the defamatory statement."
The majority takes a novel approach to our challenge from the Supreme Court. This court affirmed the Trial Court's general damage award of $25,000.00. After the Supreme Court eliminated one of the two statements held actionable by the lower courts, the majority doubles the award. That is reminiscent of the imaginary little critter called a "Schmoo" which, when cut in half, simply doubled itself!
*725 Using entirely different methodologies, the majority and concurring opinions arrive at exactly the same figure for special damages, i.e., one-half the damages awarded by the Trial Court and affirmed by this court on appeal.
Although the Trial Court apparently rejected the testimony of plaintiff's expert in setting the special damages at $188,715.00, and this court affirmed that award, the majority now uses that expert's opinion on cash flow to justify its new award of $94,357.50.
The concurring opinion uses the plaintiff's reports to the State Police of rents received to arrive at the same figure. The two approaches, as shown by the attached chart, are totally incompatible and irreconcilable and by themselves are meaningless.
It could be validly argued that plaintiff has not proved one dollar of economic loss attributable solely to the defamatory statement, because plaintiff's trial court claims for damages were overwhelmingly based on alleged losses caused by his unlawful arrest and the illegal seizures.
This writer would feel far more comfortable if this case were remanded to the Trial Court to take evidence on the economic loss attributable to the one actionable statement. We, however, have been directed to set the damages based on the record before us.
I would award Mr. Trentecosta $10,000.00 in general damages and C&T Arabi, Inc. $25,000.00 in special damages.

WOLFSON'S "CASH FLOW PROJECTIONS"
1985 162,439
1986 76,364
1987 47,810
1988 182,810
1989 92,167
1990 75,449
1991 23,204
1992 3,555
ACTUAL REVENUE STATEMENT TO STATE POLICE (FOR BINGO OPERATIONS)
Year 1988 1989 1990 1991 1992
Rent 271,088 354,728 260,477 240,132 238,180
Gross Proceeds 2,542,298 3,111,441 2,697,217 2,410,561 2,615,525
No. of Individuals 127,273 175,708 166,832 146,979 139,611

ON REHEARING
WALTZER, Judge.
We grant rehearing in part for the limited purpose of addressing whether this case was considered properly by a five-judge panel of this Court, whether legal interest should be awarded on the judgment and, if so, when such interest accrues. In all other respects, the request for rehearing is denied.

PROPRIETY OF CONSIDERATION OF THIS CASE BY A FIVE-JUDGE PANEL OF THIS COURT
Movers suggest that the convening of a five-judge panel in the instant case under *726 the authority of La. Const. Art. V sec. 8 was improper. Movers base this suggestion on their assumption that the original panel had been divided with two judges favoring the position of the dissent and one judge favoring the position of the majority. This assumption is incorrect. The record will reflect this Court's order of 13 January 1998 which provides in relevant part:
Because two panel members vote to award an amount of damages and a third panel member votes to award a lesser amount of damages,
It is ordered that a five-judge panel of this Court shall be constituted and that this matter will be re-considered by such five-judge panel pursuant to La. Const. Art.V, sec 8(b). [Emphasis added.]
The fact that after the case was submitted to the five-judge panel a member of the original panel chose to change and join the original lone dissenter does not affect the propriety of the submission of the case to the constitutional five-judge panel.

INTEREST ON THE JUDGMENT
Defendants contend that interest from the date of demand is due only for personal injury and wrongful death claims, and that the instant defamation claim is controlled by La.R.S. 13:5112 which provides that interest is not due unless provided for in the judgment.
The court shall award interest on the judgment as prayed for or as provided by law. La.C.C.P. art.1921. Legal interest shall attach from the date of judicial demand on all judgments sounding in damages, "ex delicto," which may be rendered by any of the courts. La.R.S. 13:4203. We find no statutory or jurisprudential exclusion of a defamation action, which clearly arises ex delicto, and a judgment thereon, which clearly sounds in damages, from the ambit of La.R.S. 13:4203. The State's argument to the contrary is without merit. Legal interest is designed to compensate a plaintiff for his loss of the use of the money to which he is entitled, the use of which defendant had during the pendency of the litigation. See American Motorist Ins. Co. v. American Rent-All, Inc., opinion on rehearing, 617 So.2d 944, 947-48 (La.App. 5 Cir.1993).
This interest attaches automatically until the judgment is paid, whether interest was prayed for in the petition or mentioned in the Court's judgment. Dufrene v. Duncan, 93 0403 (La.App. 1 Cir. 3/11/94), 634 So.2d 19, 22, citing Cooley v. Allstate Ins. Co., 443 So.2d 739 (La.App. 4 Cir.1983), writ denied, 446 So.2d 1229 (La.1984) and Buckbee v. Aweco, Inc., 626 So.2d 1191, 1200 (La.App. 3 Cir.1993), on rehearing in part, writ denied, 93-2691 (La.1/13/94), 631 So.2d 1162; see also dicta in Manuel v. River Parish Disposal, Inc., 96-302 and 96-303 p. 15 (La.App. 5 Cir. 10/1/96), 683 So.2d 791, 799 and Crooks v. Town of Ball, 94-466 p. 6 (La.App. 3 Cir. 11/2/94), 649 So.2d 597, 600.
We reject defendants' argument that imposition of interest from the date of judicial demand is somehow improper because of the lengthy litigation history of this case. Defendants admit that this argument is without statutory support or judicial precedent. We find particularly unsound the defendants' argument that their position was "in all respects vindicated by the [Louisiana] Supreme Court." That court held that the statements complained of were defamatory, the statement that plaintiff had bilked charities was made with actual malice, was actionable under the First Amendment, and constituted abuse of the police officer's qualified privilege to release to the public information regarding an investigation and arrest. Trentecosta v. Beck, 96-2388 (La.10/21/97), 703 So.2d 552. We do not interpret that holding as a total vindication of the defendants' position.
We conclude that legal interest on this ex delicto claim attaches from the date of judicial demand, and accrues until paid.
REHEARING GRANTED IN PART, DENIED IN PART.
ARMSTRONG, J., concurs in the result.
LANDRIEU, J., concurs in part, dissents in part.
*727 LANDRIEU, Judge, concurring in part, dissenting in part
I concur in the result reached by the majority on the two issues discussed.
I dissent to the extent that I would have granted rehearing on other issues raised by the appellants.
NOTES
[1] The court of appeal also reversed an award of $5,000 for attorney's fees. The Louisiana Supreme Court granted writs and ordered that the case be re-argued before a five-judge panel pursuant to La. Const. art. V, section 8(b). Thomas v. Busby, 96-0891 (La.5/17/96), 673 So.2d 601. On remand, the court, constituted of five judges, reinstated its original opinion.