847 So.2d 1283 (2003)
Robin G. JOHNSON and Virginia J. Gallardo
v.
Norman Kirk LANOIX.
No. 03-CA-143.
Court of Appeal of Louisiana, Fifth Circuit.
May 28, 2003.
Olden C. Toups, Jr., Grant & Barrow, Gretna, LA, Counsel for Appellants, Robin Johnson and Virginia Gallardo.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
SUSAN M. CHEHARDY, Judge.
In this defamation case, the trial judge, after a hearing, awarded the plaintiffs *1284 damages of $1,000.00 each. The plaintiffs appeal that amount as abusively low. For the reasons that follow, we amend the trial court's ruling and affirm as amended.

Facts
The plaintiffs, Robin Gallardo Johnson and Virginia Jeanette Gallardo, are sisters who live in Terrytown, Louisiana. They live in the same neighborhood as the defendant, Norman Kirk Lanoix.
The sisters were hired by the Jefferson Parish Clerk of Court to work as Poll Commissioners at Precinct No. 237 for the general election on November 7, 2000. Lanoix was Poll Commissioner in Charge of that Precinct.
In the days preceding the November 7, 2000 election, Lanoix contacted Robin Johnson and advised her that she was not to report to work on election day. Ms. Johnson contacted Don Canino to verify LaNoix's instructions and Canino advised Johnson to report to the Poll as scheduled.
Around this same time, Elphy Frank Daigle, another Poll Commissioner from Lanoix's precinct, received a handwritten Notice to Leave Premises Form from Lanoix, which ordered Daigle to remain at least 600 feet away from the Polling place on election day. The record does not reflect whether Ms. Johnson, Ms. Gallardo, or Mr. Daigle reported to work as Poll Commissioners on November 7, 2000.
In December of that same year, the sisters began receiving numerous magazines that they did not order. For several months, the sisters and, as they later learned, another neighbor, Alta Maynard, received over 50 magazines a month that they had not ordered.
On January 2, 2001, the supervisor of the Terrytown Recreation Department contacted Ms. Johnson, who sits on the Board of Directors for the Terrytown Gym Boosters Club, and asked her to meet with him. When she arrived, the supervisor showed her a postcard that he had received. The handwritten postcard purported to be from Robin Johnson and stated that, as required by law, she was reporting to people in her neighborhood that she had been convicted of contributing to the delinquency of a juvenile, possession of child pornography, possession with intent to distribute child pornography, child endangerment, sexual battery of a juvenile, and statutory rape.
In time, Ms. Johnson learned that similar postcards had also been mailed to two families in her neighborhood as well as Terrytown Elementary School, Christ the King School, St. Rosalie School, Terrytown Library, and her place of employment, the Jewish Community Center. After receiving this postcard, the Jewish Community Center did not renew her employment contract for that year. As a result, Ms. Johnson lost income totaling $11,433.00.
On January 5, 2001, Ms. Gallardo received a bill from Time Magazine for gift magazine subscriptions that she had allegedly ordered for her sister and someone named Alta Maynard. Ms. Gallardo had not, however, ordered these magazines. At that time, she did not know Ms. Maynard. As a result of this incident, however, Ms. Johnson met and spoke with Ms. Maynard. During this meeting, the sisters learned that Ms. Maynard was also a Poll Commissioner assigned to Lanoix's precinct.
On January 23, 2001, Ms. Johnson received a letter from the United States Post Office stating that her request to forward her mail from her home to her place of employment had been received. Ms. Johnson had not, however, submitted a request to have her mail forwarded. Around that same date, Ms. Maynard received a similar notice from the United States Post Office that, per her request, her mail would be forwarded to Alaska. *1285 Like Ms. Johnson, she had not submitted a forwarding order for her mail either.
After this incident, the sisters, along with Daigle and Maynard, contacted the Jefferson Parish Sheriff's Office to investigate these occurrences. After speaking with Detective David Spera of the Criminal Investigations Division of the Jefferson Parish Sheriff's Office, Ms. Johnson learned of another troubling incident.
Detective Spera informed Ms. Johnson that he had received a fax from the Pastor of the New Hope Baptist Church in Gretna, Reverend Dufrene. The fax was a letter to Reverend Dufrene, which was received on or about January 15, 2001, purportedly from Ms. Johnson asking for help with her addiction to having sexual relations with her children and her nephew, Ms. Gallardo's son. The letter also reported that Ms. Gallardo not only permitted Ms. Johnson to have sex with her son but also encouraged this behavior. Both Ms. Johnson and Ms. Gallardo state that these allegations were false.
In February of 2001, handwriting analysis of the postcard and the Notice to Leave Premises sent by Lanoix to Daigle was conducted. As a result, the Jefferson Parish Sheriff's Office determined that the same person, Lanoix, wrote both documents.[1]
On September 17, 2001, Ms. Johnson and Ms. Gallardo filed suit for personal injuries and defamation against Lanoix. On October 11, 2001, Lanoix filed an answer affirmatively admitting ten of eleven allegations of the plaintiffs' petition and failing to deny the eleventh allegation. In essence, Lanoix admitted all of the allegations of the plaintiffs' petition.[2]
On June 18, 2002, the matter proceeded to trial for determination of damages. Although the record reflects that Lanoix received personal notice of the trial date, he did not appear for trial.[3] At trial, Robin Johnson testified that, after the Jewish Community Center received the defamatory postcard purportedly from her reporting her sex offense convictions, the Center did not renew her employment contract. She lost $11,433.00 in income.
She also testified that, after the supervisor of the Terrytown Booster Club received a similar postcard, people approached her at the playground and questioned her about the contents of the postcard. She testified that she felt that she had to produce a police report "to prove my innocence." She was very distressed because several of the people did not know her before this incident so she felt that they believed the false statements made in the postcard. As a result of this distress, she was physically ill, lost sleep, cried frequently, and felt depressed. She felt that she was still experiencing this distress at the time of trial.
Finally, she stated that, after these incidents, she was afraid of Lanoix, who lived "right down the street." She testified that, if she was outside of her house when Lanoix drove by her house, "he would almost come to a complete stop and he would just glare at me."
*1286 At trial, Virginia Gallardo testified that the only false statement made about her was in the letter sent to Reverend Dufrene of the New Hope Baptist Church, alleging that she encouraged her sister to have sexual relations with her son. She felt sure that Reverend Dufrene believed that statements contained in the letter because he reported it to the Jefferson Parish Sheriff's Office. She experienced depression, mental distress and sleeplessness because of this false allegation. She also was afraid that, like her sister, she might lose her job with the Jefferson Parish School Board because of this false allegation.
After hearing the plaintiffs' testimony, the trial judge took the matter under advisement. On November 7, 2002, the trial judge without written reasons issued judgment in favor of the plaintiffs, awarding each plaintiff $1,000.00 plus interest and costs. On November 25, 2002, the plaintiffs filed a petition for devolutive appeal.
On appeal, plaintiffs argue that the amount of damages awarded is abusively low. Specifically, both plaintiffs argue that the award of $1,000.00 for general damages was "just too low in light of the actual damages suffered and in light of the egregious nature of the defamations herein." Ms. Johnson contends that the trial court erred in failing to award her special damages of $11,433.00 in income lost as a direct result of the defamatory postcard.
The elements of an action in defamation are defamatory words, publication, falsity, malice (actual or implied), and resulting injury. Albarado v. Abadie, et al., 97-478 (La.App. 5 Cir. 11/12/97), 703 So.2d 736 (citing Cangelosi v. Schwegmann Bros. Giant Super Markets, 390 So.2d 196, 198 (La.1980)). Words which impute a crime to another are defamatory per se. Id.
In this case, defendant's alleged statements implicated plaintiffs in criminal behavior, and, thus, they are classed as defamatory per se and malice or reckless disregard of truth need not be alleged. Id. (citing Fourcade v. City of Gretna, 598 So.2d 415, 419 (La.App. 5 Cir.1992)). Further, in this case, defendant admitted each of the allegations of the plaintiffs' petition. Therefore, at trial, the sole issue for the trier of fact was damages.
In Theriot v. Allstate Ins. Co., 625 So.2d 1337 (La.1993), the Louisiana Supreme Court stated:
Our jurisprudence has consistently held that in the assessment of damages, much discretion is left to the judge or jury, and upon appellate review such awards will be disturbed only when there has been a clear abuse of that discretion. And, "[i]t is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review be considered either excessive or insufficient." Appellate courts review the evidence in the light which most favorably supports the judgment to determine whether the trier of fact was clearly wrong in its conclusions. Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the jury abused its discretion. In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. Only after analysis of the facts and circumstances peculiar to the particular case and plaintiff may an appellate court conclude that the award is inadequate.
Prior awards under similar circumstances serve only as a general guide. If the appellate court determines that an abuse of discretion has been committed, it is then appropriate to resort to a review of prior awards, to determine the appropriate modification of the award. In such review, the test is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. In instances where the *1287 appellate court is compelled to modify awards, the award will only be disturbed to the extent of lowering or raising an award to the highest or lowest point which is reasonably within the discretion afforded the trial court.
This court recently considered the standard of appellate review of general damages awards in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993); the majority opinion contains the following commentary of the interpretation and application of the controlling legal precepts:
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck [v. Stevens, 373 So.2d 498 (La.1979)] to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. (Citations omitted.)
Id. at 1341-1342.
An award of damages in a defamation case is left to the great discretion of the trier of fact and should not be disturbed absent a showing of manifest error. Connor, et al. v. Scroggs, et al., 35,521 (La.App. 2 Cir. 06/12/02), 821 So.2d 542, 552. Damages for defamation include both special damages and nonpecuniary or general damages. Id. General damages may include injury to reputation, personal humiliation, embarrassment, mental anguish, anxiety and hurt feelings. Id.
The evidence shows that Lanoix published false statements about Ms. Johnson, which purported to be disclosures from Ms. Johnson, that she was convicted of contributing to the delinquency of a juvenile, possession of child pornography, possession with intent to distribute child pornography, child endangerment, sexual battery of a juvenile, and statutory rape. Lanoix published these false statements to neighborhood organizations, elementary schools, neighbors, and her employer. Ms. Johnson was approached by numerous people who had learned of the allegations and who questioned her about their veracity. She was so distraught by these allegations that she felt physically ill, lost sleep, cried frequently, and became depressed. Her employer, after learning of the allegation, refused to renew her contract so she also lost income.
Lanoix also mailed a letter to a local church pastor, purportedly from Ms. Johnson asking for counseling for her addiction to sexual activity with her children and her nephew, Ms. Gallardo's son. In the letter, the writer also defamed Ms. Gallardo by stating that Ms. Gallardo encouraged Ms. Johnson to have sexual relations with Ms. Gallardo's son. The pastor of the church believed the allegation and forwarded the allegation to the Jefferson Parish Sheriff's Office. Fortunately for Ms. Johnson and Ms. Gallardo, the detective, after investigation, determined that the letter was fraudulent and notified the pastor.
*1288 Clearly, contributing to the delinquency of a juvenile, possession of child pornography, possession with intent to distribute child pornography, child endangerment, sexual battery of a juvenile, and statutory rape are serious crimes. Publishing declarations by a person purporting to admit to criminal convictions of that nature is equally serious in light of the public humiliation such allegations could cause the accused person. Further, publishing false statements of that nature to churches, schools, recreational facilities, and to a person's employer would obviously cause considerable damage to a person's reputation in the community. Such claims in a small community like Terrytown could be very humiliating as they could quickly permeate and divide a tight-knit community in which there is little anonymity. Moreover, considering Ms. Johnson's position on the Terrytown Gym Booster Club, such allegations were even more severe.
Both Ms. Johnson and Ms. Gallardo testified that they were humiliated and embarrassed by the claims made by Lanoix. Further, Ms. Johnson felt that her reputation in the community was injured. Both women also testified that they suffered mental anguish, anxiety, sleeplessness, and depression. Finally, Ms. Johnson testified that she lost her job at the Jewish Community Center as a direct result of Lanoix's actions.
We find that the trial court's award of $1,000.00 in general damages for the injuries suffered by Ms. Johnson constitutes a clear abuse of that court's "much discretion" in making such awards under the facts and circumstances surrounding the injuries suffered by Ms. Johnson and their effect on her.
In Connor v. Scroggs, supra, the Connors alleged that their four-year-old daughter, C.C., was molested by the Scroggs during an overnight stay at their home. The Second Circuit affirmed the trial court's award of $35,000.00 to the Scroggs for their embarrassment and humiliation, considering the seriousness of the allegations, the small community in which they were made, and the length of time which it ultimately took the Scroggs to clear their names.
In Trentecosta v. Beck, 95-0096 (La. App. 4 Cir. 02/25/98), 714 So.2d 721, on remand from the Louisiana Supreme Court for determination of damages, the Fourth Circuit awarded plaintiff $50,000.00 for a defamatory statement by a police officer's statement that plaintiff was guilty of bilking thousands of dollars from charities using his Bingo Hall over the years. The appellate court also awarded, under direction from the Louisiana Supreme Court, $94,357.50 for business losses arising out of the defamatory statement.[4]
In Thomas v. Busby, 95-1147 (La.App. 3 Cir. 03/06/96), 670 So.2d 603, writ granted for other reasons, 96-0891 (La.05/17/96), 673 So.2d 601, the trial court awarded $25,000.00 considering the "extreme embarrassment over a continuing period of time as a result of this defamation" to an attorney accused of stealing potting soil from a Wal-Mart store. The award was affirmed on appeal.
In Smith v. Atkins, 622 So.2d 795 (La. App. 4 Cir.1993), the Fourth Circuit increased a defamation award to $5,000 on proof that a college teacher referred in class to plaintiff, a female student, as a "slut," causing negative reactions by her fellow students and requiring plaintiff to seek psychiatric help for depressive disorder.
In Lege v. White, 619 So.2d 190 (La.App. 3 Cir.1993), White said on more than one *1289 occasion and to more than one person that she was an undercover narcotics officer for the Vermillion Parish Sheriff's Office and was investigation Lege for the use and sale of illegal drugs. Other rumors, allegedly emanating from White and her relative implicated Lege for drug use and for hosting parties involving nudity, sex, and drug use. The court of appeal accepted the trial court's credibility determinations that led it to award $500 arising out of one or two prior incidents of suspicious events dating back to 1970, and awarded an additional $5,000 for White's defamatory statements made in connection with a 1986 eviction proceeding.
In Melancon v. Hyatt, 589 So.2d 1186 (La.App. 4 Cir.1991), 592 So.2d 411 (La. 1992), the Fourth Circuit reduced an award of $22,500 for loss of reputation, $45,000 for mental pain and suffering, and $22,500 for embarrassment and humiliation where there was no testimony as to plaintiff's loss of reputation in the community and he did not seek medical help for his alleged depression. The award was reduced to $10,000 for pain and suffering, embarrassment and humiliation, and loss of reputation, combined, then the highest reported Louisiana award in general damages for defamation.
After our review, we find that the lowest amount the trier of fact could have reasonably awarded for general damages, including pain and suffering, embarrassment and humiliation, and loss of reputation, for Ms. Johnson to be $8,500.00. Further, we also find that the trier of fact abused its discretion in failing to awarding $11,433.00 in lost wages to Ms. Johnson. Under the circumstances, we also find that $3,500 was the lowest amount the trier of fact could have reasonably awarded to Ms. Gallardo for her emotional distress, embarrassment and humiliation.
Accordingly, for the reasons given, we amend the judgment of the trial court to award plaintiffs a total of $23,433.00, which includes $11,433.00 in lost wages and $8,500 in general damages to Robin Gallardo Johnson and $3,500.00 to Virginia Jeanette Gallardo. In all other respects, the trial court's judgment is affirmed. Finally, all costs of this appeal are assessed against Norman Kirk Lanoix.
JUDGMENT AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] The record does not reflect whether criminal charges were filed against Lanoix.
[2] La. C.C. art. 1004 provides, in pertinent part, that, "The answer shall admit or deny the allegations of fact contained in each paragraph of the petition, and all such allegations, other than those as to the amount of damages, are admitted if not denied in the answer."
[3] La. C.C.P. art. 4904(A) reads, "In suits in a parish court or a city court, if the defendant fails to answer timely, or if he fails to appear at the trial, and the plaintiff proves his case, a final judgment in favor of plaintiff may be rendered. No prior default is necessary."
[4] On remand, this case was written for a five-judge panel by Judge Waltzer, with Judge Lobrano concurring and Judges Armstrong and Landrieu dissenting.