186 So.2d 358 (1966)
Mrs. Mildred SIMMONS
v.
J. C. PENNEY COMPANY et al.
No. 6641.
Court of Appeal of Louisiana, First Circuit.
May 9, 1966.
*359 Arthur Cobb, Baton Rouge, for appellant.
David M. Ellison, Jr., of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
LOTTINGER, Judge.
This is a tort action in which the plaintiff, Mrs. Mildred Simmons, instituted suit against J. C. Penney Company and its liability insurer, The Travelers Insurance Company, seeking to recover damages for false arrest, embarrassment, humiliation defamation of character, unwarranted invasion of privacy and injury to character alleged to have arisen out of an incident which occurred on or near the premises of the defendant, J. C. Penney Company, on December 21, 1963. The plaintiff alleged that on that date, and as she was emerging from the J. C. Penney Delmont Village Store, she was accosted by a store employee and accused of shoplifting. In their answer the defendants entered a general denial and affirmatively alleged that on the date in question, a department manager had detained for questioning for a brief period of time on the premises of J. C. Penney Company, the plaintiff, Mrs. Mildred Simmons, a person who the manager had reasonable grounds to believe had committed a theft of goods for sale by the company. The defendants *360 specifically pleaded that any questioning and/or detention of the plaintiff was privileged and authorized under the provisions of R.S. 15:84.5, subd. A and R.S. 15:84.6. The defendants further specifically pleaded the immunity from civil liability granted a merchant or a merchant's employee by R.S. 15:84.6.
In accordance with the prayer of the plaintiff's petition, the case was regularly tried before a civil jury on November 20, 1964, and at the conclusion of the trial and argument of counsel, the jury returned a unanimous verdict for the defendants, dismissing plaintiff's suit at her cost. The plaintiff thereafter filed a timely application for a new trial, which, after oral argument, was denied by the Trial Judge. The plaintiff thereafter perfected a devolutive appeal to this Court.
In his brief, counsel for appellants sets forth but one assignment of error, and that is that the Trial Judge was in error in instructing the jury that R.S. 15:84.5, subds. A, B and R.S. 15:84.6 were applicable to this case. Counsel makes the statement that these statutes are only applicable where a person is detained on the premises and that they do not apply to the instance where a detention occurs on the sidewalk outside of the store proper.
The record shows that on December 21, 1963, the plaintiff and her married daughter went shopping at the J. C. Penney Company Delmont Village Store in the City of Baton Rouge. After remaining in the store for a brief period of time Mrs. Simmons decided to leave and shop elsewhere. On her way out of the store, she walked by a small counter of hairbrushes, reached down and touched one or more of them, suddenly raised her hand and closed her overcoat tightly around her, all of this being done with one continuous motion, and while she was walking toward the exit of the store, which was a short distance away. She and her daughter went through the door, and while on that portion of the sidewalk immediately in front of the store, which was covered by the canopy of the store, was stopped by Mr. R. Dale Brock, a department manager of the defendant. He told her that he thought she had a brush under her coat, whereupon the plaintiff opened her coat and Mr. Brock started to walk back into the store. The plaintiff called him back and insisted that he look in her purse, which she proceeded to open, despite the fact that Mr. Brock informed her that he was not interested in looking at her purse.
Thereafter, Mr. Brock went into the store, and the plaintiff, according to her testimony, proceeded away from the store toward her automobile, changed her mind, turned and went back into the store and asked to see the manager.
Mr. Brock, who had stopped her outside and Mr. Larsen, a detective with the City of Baton Rouge, who was employed during the holidays as a part time store detective for J. C. Penney Company, both talked with Mrs. Simmons. There is some conflict in the record as to whether or not Mr. Larsen was represented to Mrs. Simmons to be the Manager of the Store, but we believe this to be immaterial. In the presence of Mr. Brock and Mr. Larsen, the plaintiff then proceeded to attempt to tear her J. C. Penney Company credit card, stating that she had not stolen anything, and that she wanted to tear her credit card because she was never going to buy anything from Penney's again. At that time there was a small group of people watching, one of whom verified the conversation which took place between Mrs. Simmons, Mr. Brock, and Mr. Larsen.
Mrs. Simmons claims that she was laughed at when she attempted to tear the credit card and that this caused her humiliation, etc. We note that after the initial encounter between Mr. Brock and Mrs. Simmons on the sidewalk just outside of the J. C. Penney Company store, Mrs. Simmons and her daughter both understood that they were free to leave. Mr. Brock had already reentered the store. We do not believe that Mrs. Simmons' claim for any *361 humiliation or embarrassment which occurred after she reentered the store is well founded by reason of the fact that she herself initiated the second encounter and also by reason of the fact that according to the record, she was not ridiculed, humiliated or embarrassed in this second encounter. Indeed, the record discloses that she did substantially all of the talking while Mr. Brock and Mr. Larsen simply stood by and watched her futile efforts to tear her credit card. Mrs. Simmons and Mr. Larsen both testified that Mr. Larsen told her, in the course of her efforts to tear the card, that she would not be able to tear it because it was constructed of heavy plastic material.
Let us now consider appellant's claim that the authority to detain and question a person together with the immunity from the liability granted to merchants by R.S. 15:84.5 and R.S. 15:84.6 applies only to the situation where the detention is accomplished on the merchants' premises. It is admitted by all parties and the record clearly shows that the initial detention or contract between Mr. Brock and Mrs. Simmons took place on the sidewalk just outside the entrance door of the J. C. Penney Company, and on the portion of the sidewalk which was covered by a canopy attached to the J. C. Penney Store. R.S. 15:84.5 provides as follows:
A. "A peace officer, or a merchant, or a merchants' specifically authorized employee, may use reasonable force to detain for questioning for a length of time, not to exceed sixty minutes, on the merchant's premises any person whom he has reasonable ground to believe has committed theft of goods displayed for sale by the merchant, regardless of the actual value of such goods, and such detention shall not constitute an arrest. Willful concealment of goods either inside or outside the store of the merchant is prima facie evidence of intent to steal and permanently deprive the owner of his goods.
B. A peace officer may arrest without warrant any person whom he has reasonable ground to believe has committed theft of goods displayed for sale, regardless of the actual value of such goods. A charge made to a peace officer by a merchant or a merchant's employee shall constitute reasonable grounds for such arrest."
R.S. 15:84.6 provides as follows:
"No peace officer, merchant, or merchant's specifically authorized employee shall be criminally or civilly liable for false arrest or false imprisonment of any person detained as provided in R.S. 15:84.5A or arrested under R.S. 15:84.5B where the said police officer, merchant or merchant's specifically authorized employee had reasonable ground at the time of the detention or arrest for believing that the person detained or arrested committed theft of goods displayed for sale, regardless of the actual value of such goods."
A portion of Mrs. Simmons' testimony relative to her detention and subsequent questioning is as follows:
"A. As I walked by this little counter of brushes, I just ran my finger down one to seeyou just don't buy a brush just because it is a brush, you buy it if the bristles are stiff enough to brush your hair with, and as I went on outside the store, I pulled my coat up. It was raining and it was real cold, and I admit that he might could have thought that I had picked up something but I didn't."
Later on, Mrs. Simmons testified as follows:
"Q. Did you slow down or speed up as you passed?
A. No, sir, I don't believe so. I kept on walking like I was going and just did that (indicating).

*362 Q. How far were you away from the brush?
A. Just an arm's reach. I can see where they might have thought I could have picked it up but after they proved that I didn't do itI mean I know he knows I didn't pick up a brush."
Later on in Mrs. Simmons' testimony the following ensued:
"Q. And you admit, as I understand it, here on the stand that your actions may have been such as to lead Mr. Brock to to think that you might have taken something, didn't you?
A. Yes, and I don't deny the fact that he had the right to question me either."
With reference to questions which Mrs. Simmons was asked outside of the store, she testified as follows:
"Q. So in this first thing, the incident outside of the store he made two statements to you, the first was, `Lady, did you pick up a hairbrush,' or words to that effect, and secondly, `Well, alright then.' That's all he said?
A. Yes, sir. But you should have heard the tone of voice he said it in.
Q. Did he sneer at you then or laugh?
A. No, he didn't laugh. No, it wasn't a laughing matter, I don't believe."

* * * * * *
"Q. As best you can recall the incident, did Mr. Brock at that release you and just leave?
A. As far as I know, yes sir. I mean I was leaving.
Q. At that time you were free to go?
A. Yes sir."
Our appreciation of the situation is that Mrs. Simmons walked by this counter of hairbrushes which, according to the record, was at a distance of about eight feet from the door to the store, and, in one continuous motion, ran her hand across several of the brushes, suddenly raised her hand and pulled her overcoat tightly around her, and without stopping, went out of the door of the store. Mr. Brock testified that he had seen all of this happen at a point 40 to 45 feet away from the brush counter, and that he had immediately started in pursuit of Mrs. Simmons, but was only able to get to her after she was immediately outside of the entrance of the store. He testified that he stopped her, asked her if she had picked up a brush, and requested that she open her coat, which she did immediately.
We believe that clearly Mrs. Simmons' actions form the basis for a reasonable belief on the part of Mr. Brock that she had committed a theft. We believe that the record further clearly indicates that Mr. Brock, after having observed the behavior of Mrs. Simmons, immediately started after her. The fact that he was only able to catch up with her immediately outside of the door to the store was doubtless caused by Mrs. Simmons' proximity to the door at the time she went through this suspicious series of motions, and the distance which Mr. Brock was from the counter and the door at the time he observed her making these motions. We further believe that the sidewalk immediately in front of the store, particularly that portion which was covered by the awning or roof extending out from the J. C. Penney Company store building, could be properly classified as a part of the premises of the defendant.
In addition, while the actions of Mr. Brock might technically be classified as a detention of Mrs. Simmons for purposes of questioning, we do not believe that this is the type of situation envisioned by the statute, but rather was a simple inquiry made by Mr. Brock, which inquiry was reasonable in the light of the prior actions of the plaintiff.
Accordingly, we find that the action of the Trial Judge in instructing the jury *363 with reference to the applicability of R.S. 15:84.5 and R.S. 15:84.6 was correct and proper.
There being no other error complained of, and finding no other error in the record, the judgment appealed from is affirmed.
Judgment affirmed.