I,SULLIVAN, Judge.
Darrell Durand sued Brookshire Grocery Company, d/b/a Super 1 Foods, (Brookshire) for false imprisonment and defamation after a store manager stopped and questioned him for suspicion of shoplifting. The trial court granted partial summary judgment in favor of Mr. Durand as to Lability, and Brookshire has appealed. Because the record contains conflicting evidence on the reasonableness of Brookshire’s actions and on whether defamation has been proved, we find that Mr. Durand has not shown the absence of a genuine issue of material fact. We, therefore, reverse and remand.
| ¡¿Facts
At approximately 2:30 p.m. on May 26, 1997, Mr. Durand was shopping at Super 1 Foods # 609 in Pineville, Louisiana. Jonathan Lemoine, the store’s pharmacy manager, was also in the store at the same time, although he was not working that day. Mr. Lemoine reported to the assistant manger, Chris Bruyere, that he had seen Mr. Durand place a blue and white package of disposable razors in his left pants pocket. Mr. Bruyere first instructed a clerk to keep Mr. Durand under surveillance. He then positioned himself near the cashiers so that he could watch Mr. Durand check out. After observing that Mr. Durand did not purchase any razors, Mr. Bruyere approached Mr. Du-rand approximately four to ten feet outside of the store’s front doors. The substance of their conversation is in dispute.
In his deposition, Mr. Bruyere testified that he asked Mr. Durand if he had any products that he had forgotten to pay for. He also told Mr. Durand that a manager had seen him pick up something and put it in his pocket. At that point, Mr. Durand voluntarily emptied his pockets, which did not contain any razors or other merchandise from the store. Mr. Bruyere testified that he then apologized and reentered the store. Mr. Bruyere was certain that no one heard him question Mr. Durand, although he admitted that he identified Mr. Durand as a potential shoplifter to other employees.
According to Mr. Durand, Mr. Bruyere told him, “You’re going to have to return to the store with your stolen merchandise.” Mr. Durand replied that he did not have any stolen merchandise, and Mr. Bruyere informed him that he was seen putting a package of disposable razors in his pocket. When Mr. Bruyere asked Mr. Durand if he could prove that he did not have any stolen merchandise, Mr. Durand felt ^compelled to empty his pockets. Mr. Bruyere appeared puzzled that Mr. Durand’s pockets did not contain the razors, and he returned to the store without apologizing. Mr. Du-rand testified that he was questioned in an area where many people were entering and exiting the store, although he did not see anyone stop and watch. A few days later, however, an employee at a tire store jokingly asked him if he had been to the Super 1 store lately.
After Mr. Durand placed his groceries in his truck, he returned to the store, seeking an apology from Mr. Bruyere. At that time, Mr. Durand produced a grocery list written on a blue and white envelope and suggested that Mr. Lemoine mistook the grocery list for the razors. Approximately thirty minutes later, Mr. Durand returned to the store, this time with his wife, demanding to return the groceries that he had purchased that day.
Mr. Lemoine testified that while he was shopping in the pharmacy department, he saw Mr. Durand place a package of Hy-top brand disposable razors in his left pocket. *91 Mr. Lemoine was able to identify the brand because of its blue and white packaging. In a written report of the incident, Mr. Lemoine stated that when he addressed Mr. Durand to “let him know that someone was there,” Mr. Durand appeared “noticeably disturbed and jumpy.” Mr. Durand, however, insisted that he did not shop in the pharmacy department that day and that Mr. Lemoine never spoke with him. Mr. Lemoine admitted that Mr. Du-rand was not under constant surveillance before he left the store.
Opinion
Appellate courts review summary judgments de novo, applying the same criteria as the trial court in deciding whether or not summary judgment should be ^granted. Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991). Although summary judgments are now favored, the mover must still show the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law. La. Code Civ.P. art. 966.
La.Code Crim.P. art. 215 provides in part:
A. (1) A peace officer, merchant, or a specifically authorized employee or agent of a merchant, may use reasonable force to detain a person for questioning on the merchant’s premises, for a length of time, not to exceed sixty minutes, unless it is reasonable under the circumstances that the person be detained longer, when he has reasonable cause to believe that the person has committed a theft of goods held for sale by the merchant, regardless of the actual value of the goods. The merchant or his employee or agent may also detain such a person for arrest by a peace officer. The detention shall not constitute an arrest.
(Emphasis added.)
“A merchant will be immune from civil liability if he can meet the requirements set forth in this article.” Jenkins v. Wal-Mart Stores, Inc., 601 So.2d 21, 23 (La.App. 1 Cir.1992). See also Comment (c) to Article 215, providing that “[i]f the detention is authorized under the first paragraph, immunity from both criminal and civil liability will naturally follow.”
In the instant case, it is undisputed that the detention was less than sixty minutes and that Mr. Bruyere was an employee authorized to detain suspected shoplifters. The present controversy concerns whether Mr. Bruyere had “reasonable cause” to question Mr. Durand, whether the detention outside the store’s front doors was “on the merchant’s premises,” and whether Mr. Durand may recover for defamation.
| &Reasonable Cause
In Johnson v. Wal-Mart Stores, Inc., 574 So.2d 502, 504 (La.App. 3 Cir.1991) (citations omitted) (emphasis added), we defined “reasonable cause” as follows:
“Reasonable Cause” under LSA-C.Cr.P. art. 215 is not synonymous with probable cause. Reasonable cause for an investigatory detention is something less than probable cause. It requires that the detaining officer have articulable knowledge of particular facts sufficiently reasonable to suspect the detained person of criminal activity. The test of liability is not based on the store patron’s actual guilt or innocence, but rather on the reasonableness of the store employee’s action under all the circumstances.
Mr. Bruyere’s decision to question Mr. Durand was based upon Mr. Lemoine’s report that he saw Mr. Durand place a blue and white package of disposable razors in his pocket. Although Mr. Lemoine was shopping at the time of the incident, he was also the store’s pharmacy manager. Mr. Bruyere testified that he took this report of a possible shoplifter seriously because it originated from his managerial staff. Thus, the present case is distinguishable from Chretien v. F.W. Woolworth Co., 160 So.2d 854 (La.App. 1 Cir.), *92 writ denied, 246 La. 75, 163 So.2d 856 (1964), cited by Mr. Durand, where a detention was based upon a report from an unidentified customer or from West v. Wal-Mart Stores, Inc., 539 So.2d 1258 (La. App. 5 Cir.), writ denied, 543 So.2d 19 (La.1989), in which an eighteen-year-old employee detained a couple even though he did not observe them engage in suspicious activity. In Thompson v. LeBlanc, 336 So.2d 344, 349 (La.App. 1 Cir.), writ not considered, 339 So.2d 26 (La.1976) (emphasis added), the court explained that “the employee authorized to make detentions in cases of this nature acts with reasonable cause when he detains a person upon complaint of a fellow employee.”
Freeman v. Kar Way, Inc., 96-8 (La. App. 3 Cir. 11/6/96); 686 So.2d 51, writ denied, 97-524 (La.4/18/97); 692 So.2d 429 illustrates that a store may be absolved from liability, notwithstanding the customer’s innocence. In Freeman, a cashier saw a young girl near the earring counter lift her shirt and place her hand under it. The cashier alerted the co-manager, who watched the girl as she moved through the store. The opinion does not indicate whether the girl was kept under constant surveillance, but when she was apprehended, she had no stolen merchandise on her person. This court agreed with the trial court that the store employees had reasonable cause to suspect the girl of shoplifting. In Eason v. J. Weingarten, Inc., 219 So.2d 516 (La.App. 3 Cir.1969), this court upheld the detention of a customer who was seen placing a bottle of hair dye in her purse, even though the bottle of hair dye was later found elsewhere in store. See also Townsend v. Sears, Roebuck & Co., 466 So.2d 675 (La. App. 5 Cir.1985), where the court held that the defendant was authorized to detain a customer who was seen placing an object in the bag he was carrying.
Mr. Durand disputed Mr. Lemoine’s testimony in two respects: he maintained that he never was in the pharmacy department and that Mr. Lemoine never spoke with him. Faced with similar conflicting testimony, the court in Jordon v. Mangel Stores Corp., 336 So.2d 278, 279-80 (La. App. 1 Cir.), writ denied, 339 So.2d 25 (La.1976) stated: “It is clear that, if [the security guard’s] testimony is accepted, the defendants had probable and reasonable cause for both the detention and arrest. If plaintiffs testimony is accepted, there could be no such reasonable cause.” In Jordon, the security guard testified that he observed the plaintiff remove a part of a socket wrench, but the plaintiff denied that he was ever in the store’s hardware department. The trial court accepted the guard’s testimony, and the appellate court found no |7manifest error. In Duhe v. Schwegmann Brothers Giant Super Markets, 384 So.2d 1019 (La.App. 4 Cir.1980), a security guard testified that he observed the plaintiff switch price stickers on a tube of suntan lotion, but the lack of corroborating evidence and conflicting accounts from other store employees led the trial and appellate courts to accept the plaintiffs protestations of innocence. The appellate court applied an analysis similar to Jor-don, remarking that the security guard’s testimony supported reasonable cause while the plaintiffs did not.
As in Jordon and Duhe, the present case will require a credibility determination to resolve the material issue of whether the merchant’s employee had reasonable cause to detain a customer. “Even under the more liberalized summary judgment law, however, summary judgment may not be granted when the supporting and opposing documents reveal conflicting versions of the facts which may only be resolved by weighing contradictory testimony and assessing witness credibility.” Citizens Bank & Trust Co. v. Mitchell, 31,435, p. 3 (La.App. 2 Cir. 1/20/99); 727 So.2d 661, 664. We, therefore, find that the trial court inappropriately granted summary judgment as to liability on Mr. Durand’s false imprisonment claim.

*93
On the Merchant’s Premises

Mr. Durand argues “as a matter of form” that Brookshire is not entitled to the protection of Article 215 because the detention did not occur on Brookshire’s premises. Mr. Bruyere testified that his conversation with Mr. Durand took place about six feet outside the store’s front doors, while Mr. Durand placed them approximately ten feet in front of the doors. In Thompson, 336 So.2d 344, the plaintiff left the defendant’s store then visited two other establishments before being approached in a common shopping area as she returned in the direction of defendant’s |sstore. The court upheld the detention, stating “sidewalks immediately in front of a merchandising establishment are considered part of the premises for pur poses of application of La.Code Crim.Pro. Art. 215.” Id. at 349. Accordingly, we disagree that Mr. Durand was not detained on the merchant’s premises because Mr. Bruyere approached him outside the store building.

Defamation

 To recover for defamation, Mr. Durand must prove: “(1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury.” Thomas v. Busby, 95-1147, p. 5 (La.App. 3 Cir. 3/6/96); 670 So.2d 603, 607 on remand, 95-1147 (La.App.11/13/96); 682 So.2d 1025, writ denied, 96-2990 (La.2/21/97); 688 So.2d 517. Words that impute a crime are defamatory per se; therefore, proof of malice is not required. Id.
The depositions reveal a conflict concerning the actual words spoken, with Mr. Bruyere testifying that he asked Mr. Du-rand if he “had forgotten” to pay for something and Mr. Durand testifying that Mr. Bruyere told him to return with his “stolen merchandise.” Mr. Bruyere was certain that no one heard him question Mr. Du-rand, and Mr. Durand said he did not notice other customers stopping to watch, although someone teased him about the incident a few days later.
We find these circumstances distinguishable from Thomas, 670 So.2d 603, where the manager announced a “suspected shoplifter” code over the store’s loud speaker and told the plaintiff in front of others that two employees had seen him remove merchandise from inventory without paying for it. The manager had no basis to believe that the plaintiff was seen removing inventory without paying for it, as the plaintiff was able to produce a receipt proving that he had purchased the merchandise. __[gln the instant case, Mr. Du-rand’s production of the blue and white envelope tends to corroborate Mr. Lem-oine’s account that Mr. Durand put something in his pocket.
In addition to the factual discrepancies in the present case, there remains a question of whether Mr. Bruyere’s words were privileged. Under Article 215, Mr. Bruyere had the right to question Mr. Durand if he had reasonable cause to believe Mr. Durand committed a theft. Louisiana jurisprudence has also recognized a privilege based upon the general law of false imprisonment. In Durand v. United Dollar Store of Hammond, Inc., 242 So.2d 635, 640 (LaApp. 1 Cir.1970) (emphasis added), the court explained:
[Tjhere exists in Louisiana a qualified privilege on the part of the storekeeper to make reasonable inquiry of a person whom the storekeeper has reasonable cause to believe has perpetrated a theft of its merchandise; whether otherwise actionable defamatory conduct enjoys such a qualified privilege depends upon the particular facts and circumstances surrounding the incident in question, including the nature of plaintiff’s conduct and actions, and the nature, extent and content of the storekeeper’s inquiry in response thereto. We wish to emphasize that whether liability attaches depends first upon whether the defendant had reasonable or probable cause to institute any inquiry or questioning of the *94 suspected plaintiff, and secondly, the nature, extent, reasonability and circumstances attendant to the subsequent inquiry or questioning.
In Eason, 219 So.2d at 518-519 (emphasis added), we stated:
Although [the store employee] did not specifically accuse plaintiff of committing theft, we think his request that she open her purse and his subsequent inquiry as to what she had done with the bottle of Loving Care constituted an accusation that she had committed that offense. Such an accusation, whether true or false, ordinarily would cause the accused person to be embarrassed and humiliated. In this instance the accusation was false and defamatory, and plaintiff would be entitled to recover from defendants unless it is shown that the inquines made by [the store employee ] were reasonable and whether [the store employee ] was justified in making them in the light of the prior activities of the plaintiff.
lioWe, therefore, find that we are unable to reach the defamation claim until the issue of reasonable cause is decided. Once that question is resolved, there still remains questions of fact as to whether the words spoken were defamatory, false, and published. For these reasons, we find summary judgment was inappropriately granted.
Decree
For the above reasons, the judgment of the trial court is reversed in its entirety, and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
WOODARD, J., CONCURS.
SAUNDERS, J., DISSENTS.