930 So.2d 130 (2006)
Samuel DAVIS, and Walter and Elaine Davis
v.
J.C. PENNEY STORES.
No. 05-CA-881.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 2006.
Writ Denied June 23, 2006.
*131 Daniel J. Frazier, Jr., Frazier Law Offices, P.L.C., Baton Rouge, Louisiana, for Plaintiff/Appellant.
Wayne R. Maldonado, David I. Bordelon, Ungarino & Eckert, LLC, Metairie, Louisiana, for Defendant/Appellee.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY, and FREDERICKA HOMBERG WICKER.
THOMAS F. DALEY, Judge.
Plaintiffs sued J.C. Penney Stores (hereinafter referred to as Penney's) for false arrest and resulting damages following plaintiffs' detention and arrest for shoplifting. The plaintiffs have appealed the trial court judgment granting the defendant's Motion for Directed Verdict after plaintiffs presented their case at trial. For the reasons that follow, we affirm.

FACTS:
Witnesses called by the plaintiffs testified that on January 10, 2001, Samuel Davis, his 13 year old sister, Elyana Davis, his girlfriend, Samantha Jones, and his infant daughter went to the Penney's store located in Lakeside Mall to return some items and purchase other items. After leaving the store, Mr. Davis and Elyana were stopped by Penney's loss prevention officers and questioned regarding items of clothing in their shopping bags. The officers *132 testified that there were 23 items in the bags, but only 10 items on the receipt. The Davises were escorted back to Penney's and the police were called. Mr. Davis signed a statement acknowledging that he had shoplifted. Samuel Davis was arrested by the Jefferson Parish Sheriff's Department and his sister, Elyana Davis, was detained by Jefferson Juvenile officers. They were not prosecuted for the shoplifting offense. They filed suit against Penney's seeking damages for false arrest. At the conclusion of the presentation of plaintiffs' case, the trial judge granted a Directed Verdict in favor of Penney's. Plaintiffs appealed. The evidence presented by plaintiffs is as follows.
Samantha Jones testified that plaintiff, Samuel Davis, is the father of her child. She testified that on January 10, 2001, she went to the J.C. Penney's store located in Lakeside Mall with Mr. Davis and his sister, Elyana Davis. Ms. Jones testified that they went to Penney's that day to return several items of clothing that she had purchased for Mr. Davis's mother and father. These items were the wrong size. She was unable to state the number of items returned or the number of bags the items were placed in. Ms. Jones testified that when they arrived at Penney's she brought her daughter to the photo studio on the second floor of the store then met Mr. Davis and Elyana in the infant's department, also located on the second floor, to pick out clothes for her daughter. After picking out clothes for her daughter, Ms. Jones separated from the Davises and met them later in the food court of the mall.
Quizena Walker testified that on January 10, 2001 she was engaged to the Davises' brother. She was working at Penney's as a cashier on the first floor in the woman's department. Ms. Walker testified that when the Davises came into the store, they gave her items of clothing they wanted to return. She placed the items on the side of the register and "told them to shop and get what they needed". Ms. Walker explained that two days prior to this incident, she noticed that this register was not working correctly in that when she would scan items they would not all appear on the receipt. Ms. Walker testified that a male employee from Penney's "rebooted" the register and she thought the problem was fixed. Ms. Walker testified that she did not scan all of the items of clothing that the Davises brought back to her register because some items were "an even exchange", explaining that the procedure was to not scan items on an even exchange. Ms. Walker was unable to state how many items were exchanged, but she did testify that some items were adult clothes and some items were children's clothes. She acknowledged that 23 items were placed in the Davises' bag while only 10 items appeared on the receipt. She further explained that six of the items that appeared on the receipt were clearance items. In addition, she gave the Davises an associate's discount of an additional 15%. Rather than using her associate number for the discount, she used another number that was to be used to give the discount to employees of Eckerd's, which is owned by Penney's, although Ms. Walker acknowledged that Mr. Davis did not work for Eckerd's. Ms. Walker testified that she worked the remainder of her shift that day and learned of the incident when she got home. On the advice of an attorney and the Davis family, she never returned to Penney's to work following this incident.
A video tape of the Davises was played during the testimony of Ms. Jones and Ms. Walker. This tape begins with the Davises and Ms. Jones in the infant's department and concludes with the Davises leaving the store. Ms. Walker complained that the tape was incomplete in that it did *133 not show the Davises coming into the store with the return items.
Samuel Davis testified that he went to Penney's on January 10, 2001 to exchange pants for his mother, some other items of clothing for his father and sister, and to pick up other items. He testified that a bag containing these items of clothing was given to him by his mother before he left their house. He was unsure of what items were in the bag. Mr. Davis testified that they entered Penney's through the mall entrance, saw Ms. Walker, and gave her the bag. They took the escalator to the infant's department and picked out things for his daughter then picked out things for his mother and brought them to the counter. Mr. Davis explained that his mother had given him one check to pay for all of the items they were purchasing that day, so they brought all items to the register where Ms. Walker was working. After paying for the items he and Elyana went to the food court in the mall and met Ms. Jones. Mr. Davis testified that after the group finished eating, a woman security officer approached him and questioned him about the items in the bags. After examining the items in the bags, she walked him and his sister back to Penney's. Mr. Davis stated that he allowed the woman to search the bags because he was afraid and because there were two other officers from Penney's present. They were brought to a secluded room at Penney's and were told that there were items in the bag that did not appear on the receipt.
Mr. Davis admitted that he signed a "civil demand notice" presented to him by Penney's admitting to theft of merchandise and acknowledging that his detention was reasonable. Mr. Davis explained that he signed this paper without reading it because he was told that if he signed the paper, he would be free to go. He denied that anyone at Penney's went over the document with him and stated that had he known he was admitting to theft he would not have signed it. On cross-examination, Mr. Davis admitted that in his deposition he testified that he read the form before signing it. He explained now that he meant that he only looked at it. Mr. Davis testified that he did not know what "theft" meant at the time he signed the form.
Elyana Davis testified that she accompanied her brother and Ms. Jones to Penney's to exchange items of clothing for her and her mother. She was unable to recall what these items were, how many bags they were placed in, or how many items were being returned. She testified that some of the items had been purchased by her mother a week earlier and some of the other items were Christmas presents that needed to be exchanged for a different size. She admitted that in her deposition, she testified that the items that were to be returned were Christmas presents for her mother and consisted of two shirts and one skirt that were purchased by Ms. Walker. Elyana did not remember what they did with the bags when they entered the store, but acknowledged they did not have the bags with them when they went to the second floor. She explained that they went to the second floor and picked out items of clothing in the infant's department and then they separated from Ms. Jones. Elyana stated that she selected items in the junior department and brought them to the woman's department near Ms. Walker to try on. She admitted that in her deposition she testified that she saw Ms. Walker scan each item, but testified at trial that while Ms. Walker was scanning the items, she was still selecting other items so she did not see what was being scanned.
Elyana testified that after leaving the store they ate in the food court of the mall where they reunited with Ms. Jones. As *134 they walked away from the food court, two male security officers and one female security officer from Penney's stopped her brother and asked to see what was in the bags. Elyana testified that she went to see what was going on and they were taken back to Penney's and placed in a room. The items were taken out of the bags by the female officer who wrote down the amount they should have been charged and accused them of theft. Elyana testified that they were not given an opportunity to explain that they had exchanged items. She further testified that her brother was presented with a document; he asked one question about the document and then signed it. Elyana did not remember the question her brother asked, but stated that it was not explained that by signing the document, he was admitting to theft.
Elyana testified that they were taken to jail by the police, and then she was taken to a juvenile facility where she was released to her mother, Elaine Davis.
Elaine Davis testified that she is the mother of Samuel and Elyana Davis. She testified that on January 10, 2001, Mr. Davis called and said he was going to Penney's to take pictures of his daughter. Ms. Davis testified that she had shopped at Penney's the week prior and had items of clothing to return and that Elyana also had gifts to return. She instructed Mr. Davis to retrieve a bag containing these items out of her closet, explaining that these items consisted of several skirts and blouses. Ms. Davis testified that Mr. Davis checked Elyana out of school and went to her office to pick up a check to pay for additional purchases they were allowed to make.
Ms. Davis testified that between 6:30 p.m. and 7:00 p.m. that evening she received a phone call from Ms. Jones telling her that Elyana and Mr. Davis had been picked up by Penney's security. Ms. Davis testified that she called Penney's and was told there was a discrepancy between what was in the bags they left the store with and the receipt. She asked Penney's to keep Elyana until she could get there to pick her up. Ms. Davis testified that she called a friend who worked with the New Orleans Police Department who picked her up and drove her to Penney's. When she got to Penney's both of her children had been taken away by the Jefferson Parish Sheriff's Office. She spoke to Ms. Anne Boudreaux, an officer with Penney's, who showed her clothing that was not on the receipt. Ms. Davis stated that she asked for the items that were returned, but was told by Ms. Boudreaux that "she could not help with the returned items". Ms. Davis explained that the purchase was voided and the check was returned to her.
The plaintiffs called Antoinette (Ann) Boudreaux to the stand on cross-examination. Ms. Boudreaux testified that she had worked in loss prevention at Penney's for 23 years with 21 of those years being manager of loss prevention. Ms. Boudreaux testified that she was contacted by one of her subordinates, Howard Compton, who thought there was a problem with an employee and a customer taking merchandise. When the suspicious activity was noted, the security video cameras began recording. She reviewed the videotape and noted that there were items that were not scanned that were placed in the bag. After reviewing the tape, Ms. Boudreaux and two other loss prevention employees located Mr. Davis and his sister in the food court of the mall. Ms. Boudreaux testified that they approached the Davises, identified themselves, and told them there was a problem with a purchase and they needed to return to the store. The Davises complied. Ms. Boudreaux testified that she *135 asked them to explain the 13 items in the bag that they did not pay for and the Davises responded that they did not know how those items got in the bags. Ms. Boudreaux testified that the Davises never told them that they had brought items of clothing back to the store for exchange. Ms. Boudreaux further testified that once she had the Davises and the merchandise back into the store, she went to look for Ms. Walker. Ms. Walker was no longer present in the store and never returned to work in the store.
Howard Compton, III was also called to the stand by plaintiff on cross-examination. Mr. Compton testified that he had been working as a loss prevention officer at Penney's for one and a half years at the time of this incident. Another officer called him into the security room because he observed customers taking merchandise from one department to another department on another floor. Mr. Compton was unaware of how long the Davises had been in the store or whether they entered the store with bags. He further testified that as he observed the Davises, he saw more merchandise going into the bags then what rang up on the receipt. At that point, he called Ms. Boudreaux who reviewed the tape. As the head of security, it was Ms. Boudreaux's responsibility to determine which suspects to approach and to interrogate the suspects. He accompanied Ms. Boudreaux and another officer to the Davises in the mall. He testified that Ms. Boudreaux explained to the Davises there was a problem with the purchase and the Davises complied and returned to the store. Mr. Compton testified that he authored the report of the incident that was turned over to the police.
Several documents were admitted into evidence. One of the documents was a voluntary statement written and signed by Mr. Compton, which corroborated Mr. Compton's testimony. A document entitled "evidence record" listing 13 articles of clothing and their price was attached to the statement. A document entitled "report of apprehension" listing Quizena Walker as the subject and stating that a warrant was put out for Ms. Walker's arrest in connection with this incident was also admitted into evidence. The earlier referenced "civil demand notice" was admitted into evidence as well, stating in pertinent part:
I, Samuel Edward Davis, have admitted to the theft of merchandise valued at $494.96 from the JCPenney Company, Inc store No. 0549-6, located at 3301 Veterans Blvd. Metairie, La. 70002.
I also hereby acknowledge that my detention on this date was reasonable . . . I may be receiving a letter . . . to recover these civil monetary damages.
In addition to these documents, a videotape depicting the Davises in the infant's department with Ms. Jones and bringing merchandise down to the register manned by Ms. Walker was also introduced into evidence. This videotape shows Ms. Walker placing numerous items into bags for the Davises and handing Mr. Davis four bags of merchandise. Some of the items were scanned, some were not. There is nothing on the videotape to indicate that the Davises had returned items to the store. The receipt for merchandise, which Mr. Davis received, showed the purchase of eighty-five dollars and seventy-six cents ($85.76) in merchandise, while the value of the items recovered, which were not receipted, totaled four hundred ninety-four dollars and ninety-nine cents ($494.99).
At the conclusion of plaintiffs' case, the defendant moved for a Directed Verdict. In granting the Directed Verdict, the trial judge stated that he was looking at the overall picture. It seemed logical to assume *136 that the proper procedure would be to scan each item that is being exchanged so that the change in size and/or color could be recorded in the inventory. He also noted that rather than use her own code to give the Davises an associate discount, Ms. Walker entered the Eckerd's number indicating to the casual observer that these customers were Eckerd's employees. He further noted that it was reasonable to allow the customers to exit the store so that they could not say they forgot to pay for the items. As for the location of where the Davises were stopped, the trial judge stated that this was three to four hundred feet away. While using the reasonable man standard, the trial judge noted that although Penney's does not own this common area of the mall, they contribute to its upkeep and concluded that this area was close enough to the store to stop the suspects. The trial judge also took into account that Penney's employees were reasonable in having their supervisor review the tape prior to stopping the Davises. Finally, the trial judge noted that Mr. Davis was 20 years old at the time he signed the document confessing to theft and that it is presumed that a person of that age would know what he were signing.

LAW AND DISCUSSION:
On appeal, plaintiffs claim the trial judge erred in rendering a Directed Verdict on the issue of fact as to whether the detention occurred on Penney's premises, when the evidence shows the detention occurred more than ¼ of a mile away and more than 45 minutes after plaintiffs had left the store. Plaintiffs further argue the trial court erred in finding the defendant had reasonable cause to detain and search plaintiffs.
A Motion for Directed Verdict should be granted when, after considering all evidentiary inferences in the light most favorable to the mover's opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. Wichser v. Trosclair, 99-1929 (La.App. 4 Cir. 2/28/01), 789 So.2d 24. The standard of review for the appellate court is whether, viewing the evidence submitted, reasonable people could not reach a contrary result. Dugas v. Automotive Cas. Ins. Co., 98-807 (La. App. 5 Cir. 2/10/99), 729 So.2d 25. The propriety of a Directed Verdict must be evaluated in light of the substantive law related to the claims. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544 (La.App. 1 Cir. 3/11/94), 634 So.2d 466, writ denied, 94-0906 (La.6/17/94), 638 So.2d 1094.
Louisiana Code of Criminal Procedure article 215 provides for the detention and arrest of shoplifters as follows:
A. (1) A peace officer, merchant, or a specifically authorized employee or agent of a merchant, may use reasonable force to detain a person for questioning on the merchant's premises, for a length of time, not to exceed sixty minutes, unless it is reasonable under the circumstances that the person be detained longer, when he has reasonable cause to believe that the person has committed a theft of goods held for sale by the merchant, regardless of the actual value of the goods. The merchant or his employee or agent may also detain such a person for arrest by a peace officer. The detention shall not constitute an arrest.
. . .
C. As used in this Article, "reasonable under the circumstances" shall be construed in such a manner so as to include the value of the merchandise in question, the location of the store, the length of time taken for *137 law enforcement personnel to respond, the cooperation of the person detained, and any other relevant circumstances to be considered with respect to the length of time a person is detained.
The official comments under this article state:
If the detention is authorized under the first paragraph, immunity from both criminal and civil liability will naturally follow. If the peace officer, merchant, or employee does not comply with the terms of the first paragraph, the detention will not be authorized and there should be no immunity.
To prevail on a claim of false imprisonment the plaintiff must prove either (1) unreasonable force was used, or (2) no reasonable cause existed for the belief that the suspect had committed a theft of goods, or (3) the detention lasted more than 60 minutes, unless it was reasonable under the circumstances that the suspect be detained longer. Anderson v. Wal-Mart Stores, Inc., 95-1026 (La.App. 5 Cir. 5/15/96), 675 So.2d 1184.
In the case at bar, there was no evidence that unreasonable force was used or that the detention lasted more than 60 minutes. Plaintiffs argue that whether there was reasonable cause for Penney's loss prevention officers to believe that the Davises had committed a theft of goods is a factual question, which the jury and not the Judge should decide. The evidence presented by plaintiffs indicates that 13 items of clothing were placed in a bag that were not scanned by the cashier and did not appear on the receipt and that plaintiffs left the store with these items. Although plaintiffs claim they presented items to the cashier that were for an even exchange, the testimony presented by plaintiffs on this point was extremely unclear and contradictory. Ms. Jones and Mr. Davis testified that Ms. Jones purchased the items to be returned, while Ms. Davis and Elyana testified that Ms. Davis purchased the items to be returned. Mr. Davis and Elyana Davis were unable to give at trial a number or even a description of the items to be returned. Ms. Jones testified that the items were for Mr. Davis's mother and father, while Mr. Davis testified that the items were for his parents and sister, and Ms. Walker testified the items returned were adult and children's clothes. Mr. Davis testified that a receipt for the return items was in the bag, while Ms. Walker did not mention a receipt. Elyana had no recollection of what they did with the items, while Mr. Davis and Ms. Walker testified that the items were given to her and placed on the side of the register. The return items were not visible on the videotape during the check out process. The cashier, Ms. Walker, engaged in no exchange like procedure during check out. Moreover, Ms. Boudreaux and Mr. Compton testified that they could review the items as they were being rung up and compare this to the videotape of what was being placed in the bags and this review indicated that 23 items were placed in the bag, while only 10 items were scanned. Given this testimony, we find there was reasonable cause for Penney's loss prevention officers to believe that the Davises had committed a theft of goods and also find that no reasonable jury could have concluded otherwise. Accordingly, we find no error in the trial court's finding that Penney's acted reasonably in stopping the Davises and in calling the police when the Davises were unable to explain the presence of items in their shopping bags that did not appear on their receipt. "A store may be absolved from liability, notwithstanding the customer's innocence." Durand v. Brookshire Grocery *138 Co., 98-1738 (La.App. 3 Cir. 6/30/99), 747 So.2d 89, 92.
Plaintiffs also argue the trial court erred in granting a Directed Verdict when there was an issue of fact as to whether the detention occurred on Penney's premises.
The testimony established that the initial stop of the Davises took place in the shopping mall outside of the Penney's store. Thus, there is no issue of fact as to where the initial stop took place, but there is an issue of law as to whether this area in the mall can be construed as "premises" for the purpose of C.Cr.P. art. 215. Numerous cases from the First Circuit have held that C.Cr.P. art. 215 may be read to construe "premises" as including the sidewalk or enclosed shopping mall area outside of the store proper. See Durand v. Brookshire Grocery Co., supra; Thompson v. LeBlanc, 336 So.2d 344 (La. App. 1 Cir.1976), app. not consid. 339 So.2d 26 (La.1976); Simmons v. J.C. Penney Co., 186 So.2d 358 (La.App. 1 Cir. 1966); Durand v. United Dollar Store of Hammond, Inc., 242 So.2d 635 (La.App. 1 Cir.1970). As noted in Thompson v. LeBlanc, supra at 349, the area in question was part of the shopping center complex where the store was located. Accordingly, we find no error in the trial court's finding that the area of the mall where the Davises were initially stopped was considered "premises" for the purposes of this statute. Likewise, we find no merit to plaintiffs' argument that the trial judge erred in granting a Directed Verdict in favor of Penney's when the initial detention occurred 45 minutes after the Davises left the store. Ms. Boudreaux and Mr. Compton testified that a third loss prevention officer noticed the suspicious activity and notified Mr. Compton. Mr. Compton then reviewed the tape and then contacted Ms. Boudreaux to review the tape, since it was Ms. Boudreaux's job, in her capacity as supervisor, to determine who to stop. Ms. Boudreaux testified that she reviewed the tape and then determined that the Davises should be questioned. When the Davises could not produce a receipt for the items in their possession and offered no plausible explanation for why they possessed store merchandise without a receipt, they were escorted back to the store and detained there. The temporal element in C.Cr.P. art. 215 refers to the time of detention, not the time between suspected criminal action and detention. Thus, we find that an initial detention, 45 minutes after the Davises left the store, is not unreasonable under these circumstances.
For the foregoing reasons, the judgment of the trial court is affirmed. Each party is to bear its own costs of this appeal.
AFFIRMED.