JjWALTZER, J.
CONCURRING IN PART AND DISSENTING IN PART WITH REASONS.
Because the majority opinion in this case ignores positive federal statutory law and jurisprudence of the United States and Louisiana Supreme Courts, I must dissent. Not only is the majority opinion manifestly inconsistent in granting general damages connected to special damages that it finds to have been non-recoverable, it also makes legal history by creating in the Fourth Circuit of Louisiana the only state court jurisdiction within the United States in which a State entity is a “person” within the meaning of 42 U.S.C. § 1983. I cannot in conscience acquiesce in this state’s court’s arrogation of authority to deviate from the clear holding of our United States Supreme Court. The impropriety of such deviation from federal authority I believe was settled conclusively in 1865 in a courthouse in Appomattox.
STATEMENT OF THE CASE
We agree with the majority’s “Statement of the Case,” summary of the trial court’s “Reasons for Judgment” and statement of the applicable standard of review. |Jt is in the application of that standard to allow general damages for injury that has been determined to be non-compensable that we believe the majority to have fallen into error.
LIABILITY OF STATE ENTITIES UNDER 42 U.S.C. § 1983
The majority correctly notes that in Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court held that state officials acting in their official capacities are outside the class of persons subject to liability under 42 U.S.C. § 1983, rejecting the notion that this language means that the statute does not authorize suits against state officers for damages arising from official acts. Indeed, state officials sued in their individual capacities are persons for purposes of § 1983. Hafer v. Melo, 502 U.S. 21, 22-23, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). We therefore concur in the majority’s affirmance of the § 1983 judgment against individual defendants Wax, Paisant and Short. However, this does not imply that in this state court case the state entities are, themselves, “persons” within the federal statute.
In Will, the court held that to interpret the words “every person” in § 1983 to exclude the States accorded with the most natural reading of the law, with its legislative history, and with the rule that Congress must clearly state its intention to alter the federal balance when it seeks to do so. Will, supra, 491 U.S. at 65, 109 S.Ct. 2304.
As to the State, the MRBA and the DOTD, the rule in Will denies plaintiff recourse under § 1983. In its zeal to preserve the plaintiffs award at all costs, the majority chooses to ignore both the positive statutory law of the United States and the jurisprudence of the United States Supreme Court. Because I do not believe this Court is free to do so, I would reverse that portion of the judgment that casts the State, MRBA and DOTD for attorney’s fees and punitive damages under 42 U.S.C. § 1983.
|,sThe language quoted in the majority opinion does not compel the conclusion that in this state-court case brought under 42 U.S.C. § 1983, the Eleventh Amendment waiver of sovereign immunity issue is relevant. In the majority’s exposition of the Will case we learn:
Petitioner [Will] filed the present 1983 actions in Michigan state court, which places the question whether a State is a person under 1983 squarely before us since the Eleventh Amendment does not apply in state courts. (491 U.S. 58, 64-65, 109 S.Ct. 2304, 105 L.Ed.2d 45).
Not only does Justice White, in his majority opinion, point out that the Eleventh Amendment is relevant only in cases brought in Federal Court, but Justice Brennan’s dissent notes the same fact:
Because this case was brought in state court, the Court concedes, the Eleventh *951 amendment is inapplicable here. 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (dissent by Brennan, J.)
Like the Will case, our case is brought in the state forum, not in federal district court. Therefore, the Eleventh Amendment analysis, which applies to cases brought in federal court, is not applicable.
I am firmly convinced that the majority’s result in the instant case is contrary to the clear holding in Will that a State is not a “person” within the meaning of § 1983. The majority in Will notes that the Michigan supreme court held the State was NOT a § 1983 “person”, contrary to a number of state and federal court decisions, and for that reason, the Supreme Court granted certiorari. The Court points out that its earlier decision in Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) — a suit originally brought in FEDERAL DISTRICT COURT — held that § 1983 does not override a state’s Eleventh Amendment immunity. Because the Eleventh Amendment applied in that federal forum case, the court did not reach the issue of whether the state was a “person” under § 1983. The Supreme Court then went on to Rstate, clearly, unequivocally and absolutely, that in state forum cases, where the 11th Amendment is not applicable, States are not § 1983 persons.
For the reasons that follow, we reaffirm today what we had concluded prior to Monell and what some have considered implicit in Quern: that a State is not a person within the meaning of 1983. (491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45)
The majority cites language from Will taken completely out of context to support its aberrant result. That portion of the Will opinion, when read in context as we are required to do, clearly and unequivocally applies only to cases brought in federal court, where 11th Amendment sovereign immunity is an issue. The Supreme Court is discussing litigants’ rights in FEDERAL COURT when it says in the dicta upon which the majority erects its thin construction:
Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a FEDERAL FORUM [emphasis added] for litigants who seeks a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars SUCH SUITS [emphasis added]unless the State has waived its immunity, [citation omitted] or unless Congress has exercised its undoubted power under 5 of the Fourteenth Amendment to override that immunity. (491 U.S. 58, 66, 109 S.Ct. 2304,105 L.Ed.2d 45)
It must be clear to any reasonable reader who is seeking truth rather than merely a deeper pocket that the quoted provision’s “such suits” refers to suits in federal fora brought by litigants seeking civil rights redress against States. It is just as clear that is does not and, indeed, cannot apply to the instant case.
Justice White SPECIFICALLY FORECLOSED the argument raised by the majority in the instant case when he wrote:
Given that a principal purpose behind the enactment of 1983 was to provide a federal forum for civil rights claims, and that Congress did not provide such a federal forum for civil rights claims against States, we cannot accept petitioner’s argument that Congress intended nevertheless to create a cause of action against States to be brought in state courts, which are precisely the courts Congress sought to allow civil rights claimants to avoid through 1983. (491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45)
| Jndeed the majority in Will rejects the petitioner’s suggestion “that we think that the scope of the Eleventh Amendment and the scope of § 1983 are not separate issues. Certainly they are. But in deciphering congressional intent as to the scope of § 1983, the scope of the Eleventh Amendment is a consideration, and we de *952 cline to adopt a reading of § 1983 that disregards it.” (491 U.S. 58, 66-67, 109 S.Ct. 2304,105 L.Ed.2d 45).
That is not the same thing as applying 11th Amendment notions of waiver of immunity to create a cause of action against an entity that is not, in the first place, a “person” within the meaning of § 1983.
GENERAL AND SPECIAL DAMAGES FOR INJURIES ARISING OUT OF INCIDENT DURING PLAINTIFF’S SECOND PERIOD OF EMPLOYMENT BY DOTD
We agree with the majority’s conclusion that under Roberts v. Benoit, 605 So.2d 1032 (La.1991) the defendants are not responsible for damages arising from injuries suffered by plaintiff incident to a narcotics arrest that occurred during her second period of employment by the DOTD. We also note that these noncom-pensable-in-tort damages are the only physical damages sustained by plaintiff.
Like the plaintiff in Polk v. Blanque, 93-1740 (La.App. 4 Cir. 3/15/94), 633 So.2d 1382, writ denied, 94-0923 (La.5/20/94), 637 So.2d 484, the trial court succumbed to the classic “post hoc” logical fallacy. Post hoc, ergo propter hoc, is an argument that asserts that one event is the cause of another from the mere fact that the first occurred prior to the second. In discussing various fallacies of causation, Barry and Soccio write in Practical Logic, 3d ed. 1988, at p. 244:
As an absurd example, suppose that after breaking a vase, a person fell and broke a leg. If we inferred that breaking the vase caused the accident, we’d be guilty of the post hoc fallacy. A more serious example is found in Egyptian history. Egyptians used to worship a bird | finamed the ibis because each year, shortly after flocks of ibis had migrated to the banks of the Nile, the river overflowed its banks and irrigated the soil. The Egyptians believed the ibis caused the flood water, when of course both the birds’ migration and the river’s overflow were attributable to the change of season.
To use a slightly different analogy, plaintiffs logic could be applied to hold the manufacturer of an automobile accident victim’s mattress liable for his injuries: had his mattress been more comfortable, .he would not have awakened when he did, gotten into his car and been at the intersection where he was hit by a speeding truck. Louisiana law simply does not contemplate imposition of liability for this type of remote causation. .
Having correctly reversed the judgment for special damages attributable to the narcotics arrest incident, the majority incredibly affirms the general damages award without any reduction for general damages attributable to that incident. It is totally incomprehensible to me how the majority can, as it must, conclude that NONE of the million dollar general damage award was attributable to the plaintiffs only physical injury and only permanent injury. To hold, in effect, that the trial court awarded NOTHING for general damages for a permanent physical injury is quite simply aberrational.
According to Dr. Wolfson’s uncontro-verted calculations, plaintiff lost $80,773 between 1989 and 16 September 1996, based on her salary with Customs. Dr. Wolfson’s projected future loss estimate of $837,263 was based on his projection of the total loss of income occasioned by plaintiffs total disability which she contended precludes her from any continued employment Because there is absolutely no evi-dentiary support for the trial court’s finding MRBA responsible for the plaintiffs alleged permanent disability, which was caused by the encounter with the narcotics suspect, I am unable to accept the economist’s projection of $837,263 lost future wages as recoverable against these defendants.
17Because the attribution of her total disability to these defendants in manifestly erroneous and clearly wrong, I agree with the majority’s amendment of the award of *953 special damages to provide for lost income to date of trial ($80,773) plus the present value of the difference between her expected future wages with Customs and expected future wages with MRBA ($390,756), for a total of $471,529. Since these special damages were caused by both the defamation and civil rights violation, the State, MRBA, DOTD, Paisant, Short and Wax would be solidarily liable for the special damages.
There is no way to determine from the trial court’s judgment which portion of the $1,000,000 general damage award is attributable to the alleged harassment that as noted above is subject to the EXCLUSIVE jurisdiction of the state’s Civil Service Commission and alleged work-related total disability. The economist testified that the amount of special damages attributable to plaintiffs loss of future employment by MRBA was $365,734.
In light of what I find to be a necessary reduction of the special damages award, the general damages award of $1,000,000 for loss of reputation and mental suffering is shocking to the conscience and would constitute an abuse of the great, even vast discretion allowed the trier of fact by the Youn decision.
Damages for defamation can include injury to reputation, personal humiliation, embarrassment, and mental anguish and suffering. Thomas v. Busby, 95-1147 p. 8 (La.App. 3 Cir. 3/6/96), 670 So.2d 603, 609. The majority has ignored recent defamation awards in this state that provide guidance in fixing the highest reasonable amount that may be awarded to this plaintiff under the circumstances of this case.
In Melancon v. Hyatt, 589 So.2d 1186 (La.App. 4 Cir.1991), writ denied 592 So.2d 411 (La.1992), there was no testimony as to plaintiffs loss of reputation in the community and he did not seek professional help for his alleged depression. RThe trial court had awarded $22,500 for loss of reputation, $45,000 for mental pain and suffering, and $22,500 for embarrassment and humiliation. This Court reduced the award to $10,000 for pain and suffering, embarrassment and humiliation, and loss of reputation ’combined. The $10,000 award was, in 1991, the highest reported Louisiana award of general damages for defamation.
Defamation concerning drug use and nudity resulted in an award of $5,500 in Lege v. White, 619 So.2d 190 (La.App. 3 Cir. 1993).
A professor’s reference to his student as a “slut” gave rise to a general damage award of $5,000 in Smith v. Atkins, 622 So.2d 795 (La.App. 4 Cir.1993).
A falsely accused rapist recovered general damages of $50,000, reduced from $80,000, in Jeansonne v. Detillier, 94-903 (La.App. 5 Cir. 5/10/95), 656 So.2d 689. The court of appeal affirmed the trial court’s judgment on remittitur, citing Taylor v. State, 617 So.2d 1198 (La.App. 3 Cir.1993) as the highest appellate award in a similar case. In Taylor, plaintiff had been improperly arrested for fraudulently obtaining narcotic drugs. She suffered mental anguish, emotional distress and embarrassment. The court reduced a $500,000 award to $40,000. Because rape carries a greater negative stigma than drug use, the Jeansonne court reduced its award to $50,000.
This Court affirmed a general damages award of $350,000 in Guillory v. State Farm Ins. Co., 94-1405 (La.App. 4 Cir. 9/28/95), 662 So.2d 104. There, the Court found there was no defamation of an insurance agent or negligent misrepresentation to the agent by State Farm. The Court affirmed the trial jury’s finding of intentional racial discrimination in the administration of State Farm’s loss program. The jury awarded plaintiff $4,000 in psychological counseling expenses as a result of the discrimination. There was testimony that Guillory met with Ms. Suzanne Pauratore, B.C.S.W., seventy times at an approximate cost of $4,200. I note that the plaintiff in the instant case neither sought nor obtained ^similar services. This Court af *954 firmed the jury’s award of $350,000 in general damages, finding the award to be within the great and vast discretion of the jury under Youn, supra.
In Thomas v. Bushy, supra, the court upheld $25,000 in general damages based on plaintiffs testimony that he was embarrassed and humiliated by having been stopped at a gardening center and accused of theft in front of other customers. He testified to embarrassment and humiliation, and said he was consumed by the incident for several weeks but sought no professional help.
In Trentecosta v. Beck, 95-0096 (La. App. 4 Cir. 2/25/98), 714 So.2d 721, 723, we awarded $50,000 in general damages where the operator of a bingo business was defamed, causing $94,357.50 in monetary damages.
In Blades v. Olivier, 98-1957 (La.App. 1 Cir. 6/25/99), 740 So.2d 755, the court upheld a $15,000 defamation award. Plaintiff had a disagreement with defendant and resigned from her position. She immediately obtained other employment whereupon defendant sent a letter to the three principals of the new employer concerning details of plaintiffs expense and payroll account activities while employed by defendant, including a claim of embezzlement. At trial, plaintiff testified without contradiction that the defamatory statements affected her emotionally and physically, lost clumps of hair, was on edge and upset all the time which adversely impacted her relationship with her family. The statements also adversely affected her relationship with her new employers, who required her to meet with her superiors and explain the statements contained in defendant’s letter page by page. She was embarrassed and felt that the embezzlement accusation put questions in the minds of her superiors regarding her character and employment. She also testified to great distress over the impact the statements had on her image in the real estate community.
ImHaving considered the record as a whole, I conclude that the highest reasonable award for general damages to this plaintiff, who has suffered no physical damage, has neither sought nor received psychiatric care or psychological counseling and who has been awarded the entire financial compensation suggested by her own expert economist is $400,000. In light of the foregoing jurisprudence, I believe the majority was clearly wrong in failing to apportion $50,000 to the defamation claim and $350,000 to the civil rights claim.
The attorney’s fee having been awarded pursuant to the provisions of 42 U.S.C. § 1983, which SPECIFICALLY does not apply to state actors, it should not be assessed against the state agency defendants, MRBA and DOTD, but only against defendants Paisant, Short and Wax.
Likewise, I am convinced that the punitive damage award should be assessed only as against the individual defendants Pais-ant, Short and Wax, who are solidarily liable for plaintiffs civil rights action damages. The State, MRBA, DOTD, Paisant, Short and Wax are solidarily liable for plaintiffs defamation damages only.
Considering the foregoing, I would reverse that portion of the judgment against the State of Louisiana, the MRBA and the DOTD awarding plaintiff attorney’s fees and punitive damages under 42 U.S.C. § 1983. I would amend the award of special damages for loss of past and future earnings to no more than $471,529. I would also amend the award of general damages to no more than $400,000, composed of no more than $350,000 for the civil rights act violation and no more than $50,000 for the defamation action.
In all other respects, I concur with the majority opinion.